63 So.2d 440 (1953)
LONGWELL
v.
MASSACHUSETTS BONDING & INS. CO. et al.
No. 3619.
Court of Appeal of Louisiana, First Circuit.
January 26, 1953.
Rehearing Denied March 19, 1953.
Writ of Certiorari Denied April 27, 1953.
Adams & Reese, New Orleans, Grover C. Vidrine, Oakdale, for appellant.
A. M. D'Angelo, Alexandria, for appellees.
LOTTINGER, Judge.
This is a suit in which the plaintiff, Harry J. Longwell, seeks to recover damages in the sum of $880 for the use and benefit of the Canadian Fire Insurance Company as the result of damage caused the former's house when it was run into by a truck owned by one Roland J. Trosclair. Joined as defendants are Trosclair, Augustin Trahan, Trosclair's employee, and the Massachusetts Bonding and Insurance Company, Trosclair's insurer. The following facts are undisputed:
The truck was entrusted by Trosclair to Trahan on January 24, 1949, with instructions to deliver a load of shrimp to New Orleans. The employee left his employer's place of business in Cameron, proceeded to New Orleans and accomplished his mission. On his return trip, however, upon reaching the town of Kinder, instead of turning south, which would have been the normal route to Cameron, he turned north and proceeded to Oakdale. There he met one Ida Mae Smith to whom he entrusted the operation of the truck and while she was driving same with Trahan seated next to her she drove into plaintiff's house causing the damage complained of.
Apparently no answer was filed by Trahan. The remaining defendants admitted *441 that the Massachusetts Bonding and Insurance Company was the insurer of Trosclair and defended the suit on the following grounds:
1. That as the employee Trahan had deviated from his employment he was not acting within the course and scope thereof and consequently Trosclair could not be held liable under the doctrine of respondeat superior.
2. That the truck was being driven by Ida Mae Smith at the time of the accident, without the permission of Trosclair, and that she was not an additional insured within the terms of the insurance contract.
Since no answer had been filed by Trahan and no default entered against him, the court dismissed the case against him as of nonsuit. The suit against Trosclair individually was dismissed but judgment was rendered against the Massachusetts Bonding and Insurance Company in the amount prayed for, and the case is now before us on an appeal taken by the latter.
The case presents virtually no question of fact. The record discloses very clearly that the damages sued for were caused by the negligent driving of Ida Mae Smith and this point is not even mentioned by counsel for defendants in their brief. Furthermore, we believe it quite clear that Trahan was not within the course and scope of his employment at the time of the accident and that, therefore the suit was properly dismissed as to his employer, Trosclair.
More difficult of solution is the liability of the remaining defendant, Massachusetts Bonding and Insurance Company. Counsel for plaintiff predicates his cause of action against the insurer on the ground that as Trahan had initial permission to use the truck the appellant is liable under the so called "omnibus clause" of the policy. Counsel for defendant, on the other hand, contend that as Ida Mae Smith was not given permission to use the truck by its owner, Trosclair, and that as the employee, Trahan, had no authority to grant such permission, she was not an assured within the terms of the policy. Counsel on both sides concede that this precise point is res nova in this state. The pertinent part of the omnibus clause reads as follows:
"The unqualified word `insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured, with respect to the use of a non-owned automobile in the business of the named insured." (Emphasis supplied.)
Trosclair testified that he had given Trahan, who had been in his employ several months, positive instructions never to let anyone else drive the truck involved or any of his other trucks. While this testimony is not contradicted, it was apparently discounted by the trial judge because it was not corroborated by any other evidence and because Trahan was not present to testify. We comment on this point because it is raised in the briefs of respective counsel However, in view of the holding of our Supreme Court in the case of Waits v. Indemnity Insurance Company, 215 La. 349, 40 So.2d 746, 748, the matter of instructions or violation thereof appears to be immaterial. We refer to the following language of the cited case in particular:
"Under such circumstances any instructions given Selby as to the use of the car or whether there had been a deviation from the instructions are immaterial and of no moment."
The above holding is based upon a previous holding, that in the case of Parks v. Hall, 189 La. 849, 181 So. 191, 194, wherein the Supreme Court held as follows:
"We therefore conclude that the permission of the assured to Hall to use the car in the first instance, irrespective of the use to which he put the car while in his possession, was `permission of the assured' within the meaning and contemplation of the `omnibus clause' and the insurer is therefore liable to plaintiffs thereunder." (Emphasis by the Court.)
*442 From the above authorities it is clear that 1) the matter of what instructions, if any, were given to Trahan by Trosclair is immaterial insofar as deviation from his employment is concerned, and 2) that the deviation by Trahan from the course of his employment is likewise immaterial in determining the question of the insurer's liability. The pivotal point of the case, therefore, becomes that of the effect, if any, of Trahan's allowing Ida Mae Smith to drive the truck.
While, as mentioned previously, the precise point here presented does not appear to have been heretofore passed upon by our appellate courts, we find presented in the case of Monroe v. Heard, La.App., 168 So. 519, 521, a situation which closely parallels the present case. In this suit the owner of the car, Miss Heard, loaned it to a Mrs. Perkins, who apparently had a date with a Mr. Borsum, who was driving at the time of the accident. It was alleged in the petition that Borsum was driving under the direction and control of Mrs. Perkins, who, of course, was present in the car with him. The lower court sustained an exception of no cause of action filed by Miss Heard and her insurer. This court affirmed the judgment insofar as the insured was concerned but reversed the judgment in favor of the insurer on the ground that as Mrs. Perkins had permission to use the car she was an additional insured and that the policy would cover her liability if, on the trial of the case, it should be shown that she was in control and direction of the automobile and the driver. However, in the course of the opinion, the following holding was made which is pertinent here:
"Mrs. Perkins, as to the owner, Miss Heard, was a licensee or borrower of the car. As it is alleged that the owner consented to the use of the car by Mrs. Perkins, it follows that the provisions of the policy would cover the negligence of Mrs. Perkins in the operation of the car. However, the coverage could not be extended to liability for the negligence of another with whom the borrower had intrusted the operation of the car without the consent of the owner. We quote the following from 6 Blashfield's Cyc. of Automobile Law and Practice (Permanent Ed.) p. 326 § 3943: `Permission to drive does not confer upon the licensee the power to confer permission, and one driving under this derivative, and therefore defective, permission is not an additional assured.' Therefore, in the absence of any allegation that Borsum was operating the car with the consent of Miss Heard, the owner, the petition fails to show liability in the insurance company for the injury caused by the negligence of Borsum." (Italics ours.)
We have again examined Blashfield's Cyclopedia of Automobile Law and Practice, Sec. 3943 (now found in Vol. 6 at page 617) and find the rule to be presently stated as follows:
"Named insured's discretionary power to select additional insureds cannot be delegated, and permission to drive does not confer upon the licensee the power to confer permission and one driving under this derivative, and therefore defective, permission is not an additional assured * * *."
Likewise, in 45 C.J.S., Verbo Insurance, § 829, at page 901, the rule is stated to be as follows:

"Delegation of permission. One to whom insured has given permission to use the car has no authority to delegate such permission to another so as to make the latter an additional insured * * *." Citing Monroe v. Heard, La.App., 168 So. 519, supra, and other cases.
See also American Jurisprudence, Volume 5, Automobiles, § 535.1. (New Text) By Permittee of Named Insured.
"It appears that one who has been given permission by the named insured to use the automobile can delegate this authority to a second permittee so as to bring the use of the automobile by this person within the protection of the policy if permission has been expressly given by the named insured to make such delegation.1 However, an original permittee who has been given *443 permission to use the automobile but has been expressly forbidden to delegate this authority cannot do so, and the use of the car by a second permittee in violation of the named insured's express order is not within the protection of the policy.2 And an original permittee who has been given permission to use the car cannot, according to the great weight of authority, delegate this authority to a second permittee so as to bring the use of the car by that person within the protection of the policy where the initial permission, is silent as to the question of delegation of authority.3 But the initial permission given by the named assured to an original permittee includes, according to the better view, the use of the automobile by a second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee. This is the case if the original permittee is riding in the car4 or if the car is driven in his interest or for a purpose mutual to him and the second permittee.5 In a number of cases the point of view has been taken that the initial permission given by the named assured to the original permittee to use the car does not give him authority to delegate the actual operation of the car to a second permittee even though the original permittee is riding in the car driven by the second permittee or the second permittee in using the car does so in the first permittee's interest.6 The rule that permission to use an automobile does not include the authority to let another operate the car has been applied in a number of cases in which it appeared that the second permittee was not a licensed driver.7 Similarly to the rule stated above,8 it has been held in a small number of cases that the initial permission given by the named assured to the original permittee does not include by implication, the authority to delegate the operation of the automobile to an agent or servant even where the latter operates the car in the interest of the original permittee.9"
It will be remembered that in the Monroe case, supra, the matter was remanded to ascertain whether the borrower, Mrs. Perkins, was then directing and controlling the driving of the vehicle and counsel for plaintiff in this connection contends that as Trahan had initial permission to use the truck and was in same at the time of the accident, that the truck was in his custody and control and he had a right to direct the driver. The fallacy in this proposition, however, is that while in the petition it is alleged that Trahan was directing the driving of the truck and had control over the vehicle the record is barren of any testimony in this connection. This being the case, we feel that the Monroe case controls and that the insurer cannot be held liable as no one who had authority to do so granted Ida Mae Smith permission to operate the truck.
Counsel for plaintiff has cited and relied upon the cases of Donovan v. Standard Oil Company, La.App., 197 So. 320 and Perrodin v. Thibodeaux, La.App., 191 So. 148, which he contends are controlling here. An examination of these authorities reveals that as in each the driver who loaned the vehicle had more or less general discretion and continuous control over the vehicle he could validly grant permission to a third party to use the vehicle. Here the situation is different. The insured's driver, it seems clear from the record, did not have any such general discretion and continuous control, but only discretion and control for the singular and specified purpose of making a trip to New Orleans and returning. This being the case we do not believe he could grant permission to another to operate the truck so as to bring the third person within the meaning of the term "insured" as used in the omnibus clause of the policy.
Counsel for plaintiff further directs our attention to 160 A.L.R. page 1213 wherein there appears the following:
"It has been held in the great majority of cases that the initial permission given by the named assured to the original permittee includes, by implication, authority to delegate the operation of the automobile to an agent or *444 servant where the original permittee is riding with the agent or servant in the car."
We have no quarrel with the correctness of the above quoted statement, but find that an examination of the annotations listed thereunder reveals situations where either the original permittee had general control of the vehicle and thereby could be said to have implied permission to allow another to operate it, or as in the Monroe case, supra (which is included in these annotations), there was a question of direction and control over the third party by the original permittee. It is clear that in the instant case, there was no master-servant relationship, nor were there proven any facts which would warrant our holding Ida Mae Smith to have been the agent of Trahan.
For the reasons assigned, therefore, the judgment appealed from is reversed and the plaintiff's suit dismissed at his cost.
Judgment reversed.
ELLIS, Judge (dissenting).
It is my opinion that the majority has fallen into error in its application of the law to the facts as shown in their opinion.
In Vol. 60, C.J.S., Motor Vehicles, § 444, Page 1141, the law applicable to this case is succinctly stated under the heading, "Occupant of Vehicle Driven by Another":
"An occupant other than the driver of the vehicle may be held responsible for an injury sustained by a third person by reason of the negligent operation of the vehicle where the occupant, although he is not the owner, is in actual control of its operation, or where he has the right to control and direct the driver. So, one in possession and control of a motor vehicle and using it for his own purposes may be liable for the negligence of a companion whom he permits to drive, and the fact that he does not direct the manner of operation does not relieve him from liability if he has the right to govern the operation of the vehicle; * * *." (Emphasis added.)
The above principle is recognized and quoted in Monroe v. Heard, La.App., 168 So. 519-522, a decision of this Court. In that case, Miss Heard, the owner of the car, had loaned it to a Mrs. Perkins "who was a passenger in said car at the time and who was then directing and controlling the driving thereof", and at the time of the accident the car was being driven by a Mr. Borsum with the permission of Mrs. Perkins. The Court recognized the fact that Mrs. Perkins was an insured under the omnibus clause and had she been driving the owner would have been liable, however, there was no allegation and no showing that Borsum, Mrs. Perkin's guest, was operating the car with the consent of the owner, therefore, there was no liability of the insurance company for the injuries caused by the negligence of Borsum. The Court then went on to say:
"The other and more serious question is whether or not, under the pleadings, Mrs. Perkins, while riding in the automobile with the consent of the owner as licensee, and while directing Borsum in driving, was `legally operating' the automobile, and was `legally responsible for its operation.' It is true that she is not made a defendant in the suit, but plaintiff contends that, under the pleadings, she was responsible for the operation of said car and therefore within the provisions of the policy.
"The primary purpose of the policy was to protect the owner, Miss Heard, from liability which she might incur because of the operation and use of the car. To this extent it was purely a contract of insurance and indemnity inuring to the benefit of Miss Heard and any person who might have a claim against her because of the negligent operation of the car. But by the quoted clause in the policy the insurer went further and agreed to pay damages in certain instances where the owner was not personally liable. This liability extended to damages caused by a person while riding in the car or legally operating *445 same and by a person legally responsible for the operation of the car, subject to the condition that the riding in, operation of, or the responsibility for, the operation must be with the consent of the owner. The car was placed under Mrs. Perkins' unrestricted charge by the owner. Was Mrs. Perkins responsible to plaintiff for the operation of the car? Does the petition set out such facts as would render Mrs. Perkins liable if she were made a party defendant? If she is liable for the operation of the car by Borsum, and if a judgment could be rendered against her, it follows that she would be protected under the policy to the same extent as the insured owner. The evident purpose of this clause in the policy was to make available to those persons other than the owner designated in this clause the protection which was available to the insured owner under the principal clauses in the policy, when such other persons incur liability while using the car for business or pleasure and with the consent of the owner.

* * * * * *
"The liability of the occupant of an automobile driven by another under his direction and control is stated in 42 Corpus Juris at page 1123, as follows: `So likewise where the occupant, although he is not the owner and is not driving the vehicle himself, is in actual control of its operation, or where he has the right to control and direct the driver and fails to do so, or where, being in control, he permits another to drive, he will be held responsible for an injury sustained by a third person by reason of the negligent operation of the vehicle.' In support of that proposition the case of Smith v. Sladovich, 3 La.App. 527, is cited in the footnotes. In the Smith v. Sladovich case, the court said: `If Rosengarten, Junior, had been the owner of the car, there could have been no question of his liability. We think he is in the position of owner so far as his responsibility for the operation of the car is concerned.' (Emphasis added.)
"* * * If the allegations and proof show that Mrs. Perkins could be held responsible for the negligent operation of the car, then plaintiff comes within this `extended coverage' clause in the policy and has a right to proceed in the enforcement of this right against the insurance company." (Emphasis added.)
While I am of the opinion that the Monroe case could have been decided on the facts stated in the opinion without the necessity of remanding it as the facts clearly show that Mrs. Perkins had permitted Borsum to drive the car and she was an occupant of the car at the time of its negligent operation and was in legal possession by authority of the owner and, therefore, had the right to control and direct its operation, it cannot be doubted that the Court recognized fully the principle of law as stated in C.J.S., supra.
In attempting to differentiate the Monroe case, supra, from the present case the majority opinion states:
"It will be remembered that in the Monroe case, supra, the matter was remanded to ascertain whether the borrower, Mrs. Perkins [had the right of direction and control], of the vehicle and counsel for plaintiff in this connection contends that as Trahan had initial permission to use the truck and was in same at the time of the accident, that the truck was in his custody and control and he had a right to direct the driver. The fallacy in this proposition, however, is that while in the petition it is alleged that Trahan was directing the driving of the truck and had control over the vehicle the record is barren of any testimony in this connection. * * *"
It is not necessary under the law to prove that Trahan was directing the driving of the truck and had control over the vehicle at the time of the accident. It is sufficient if the facts show that Trahan was in legal *446 possession of the vehicle and had the right to direct and control its operation.
Taking the facts as shown in the majority opinion, Trahan, as the employee, had the legal possession and control of the vehicle when he "met one Ida Mae Smith to whom he entrusted the operation of the truck and while she was driving same with Trahan seated next to her she drove into plaintiff's house causing the damage complained of." There is no dispute as to the negligence of Ida Mae Smith, and her negligence is imputed to Trahan who was an insured under the omnibus clause, and, in my opinion, the judgment of the District Court for these reasons was correct in decreeing judgment in favor of the plaintiff and against the defendant insurance company, and should be affirmed.
For the above reasons I respectfully dissent.