82 So.2d 55 (1955)
Enman BROOKS, Plaintiff,
v.
DELTA FIRE & CASUALTY COMPANY, Defendant.
No. 4056.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
Rehearing Denied September 15, 1955.
Writ of Certiorari Denied November 7, 1955.
Weber & Weber, Baton Rouge, for appellant.
Watson, Blanche, Fridge, Wilson, Posner & Thibaut, Baton Rouge, for appellee.
TATE, Judge.
This is a suit for damages sustained in an automobile accident. Before trial, plaintiff Enman Brooks dismissed his suit as against codefendant, Dr. Jerry A. Pierce, owner of the car involved in the accident, and service was never made on codefendant Bruce Deitz (deceased), father of Miss Hilda Deitz, driver of the car, a minor at the time of the accident.
The sole remaining defendant is the Delta Fire & Casualty Company in its capacity as liability insurer of Dr. Jerry A. Pierce, owner of the car driven by Miss Deitz involved in the accident, and allegedly *56 also as liability insurer of Mrs. Jerry Ellen Moreau, daughter of Dr. Pierce, and of Miss Deitz under the "omnibus" clause of the policy issued by it covering operation of this motor vehicle. The District Court in an able opinion denied plaintiff recovery on the ground that at the time of the accident Miss Deitz was not authorized to drive the car in question by its named insured, Dr. Pierce, and that therefore there was no coverage by the insurer of the operation of the vehicle at the time of the accident. From this judgment, plaintiff has perfected this appeal.
The chief question involved is whether or not the policy issued by defendant to Dr. Pierce covers the driver of the automobile at the time of the accident. The "omnibus clause" of the policy in question reads as follows:
"III Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." (Italics ours.)
The undisputed facts concerning use of Dr. Pierce's automobile on the day of the accident are these: Dr. Pierce's daughter, Mrs. Moreau, intended to go to New Orleans for medical examination on the day of the accident. Since she wished to take her six-week old baby, she asked her friend, Hilda Deitz, to go with her to take care of the baby. Miss Deitz also wished to go to New Orleans to pick up some papers to prepare for examination as a beautician both for herself and for some of her friends. Both missions were accomplished in New Orleans, and the friends returned to Baton Rouge, where they attempted to call their parents to let them know of their return. They reached the Pierces, but the Deitz telephone was busy, so they drove to the Dietz residence. While there, they decided to deliver the application forms to one of Miss Deitz' friends. Up until this time, these young ladies testified, Mrs. Moreau had been doing all the driving. But at this point since Mrs. Moreau's baby was crying, Mrs. Moreau asked Miss Deitz to drive while she held her baby. It was while Miss Deitz was driving to the home of the friend that the accident occurred.
The testimony indicates that Miss Deitz had stayed overnight at the home of Dr. Pierce, where Mrs. Moreau although married was living at the time. Both Dr. and Mrs. Pierce knew that Miss Deitz was to accompany their daughter to New Orleans. It is admitted that there was no discussion whatsoever before the girls left as to whether or not Miss Deitz or anyone else was authorized to drive the family car. Before the accident, Miss Deitz had no inkling that she was not supposed to drive this car.
However, on the trial of this matter, Dr. Pierce testified, corroborated by his wife and by his daughter, that on several prior occasions he had informed his daughter not to let anyone else drive his car.[1] Based on this testimony that Dr. Pierce had not authorized Miss Deitz' use of the automobile, and also on its finding that at the time of the accident Miss Deitz was engaged in a personal errand of no benefit to the Pierces or their daughter, the District Court found that her operation of the motor vehicle was not covered under the omnibus clause of the policy in question under the holding of this Court in Longwell v. Massachusetts Bonding & Ins. Co., 63 So.2d 440, writ of certiorari denied.
We respectfully must disagree with these legal conclusions.
*57 Omitting surplus language, the clause in question reads that the "word `insured' * * * includes any person while using the automobile * * *, provided the actual use of the automobile is by the named insured or with his permission." (Italics ours.) It is unquestioned that Dr. Pierce authorized the "use" of this automobile for the mission(s) to New Orleans. He had given legal control of its use to his daughter, Mrs. Moreau, at least. Pursuant to that legal control vested in her, Mrs. Moreau had requested or permitted Miss Deitz to drive.
Since Parks v. Hall, 189 La. 849, 181 So. 191, our Supreme Court has liberally construed the "permission" in the omnibus clause so as to afford coverage when initial permission is given even when the original permittee deviates from or even violates the instructions given him by the owner as to the use of the automobile.[2] In the recent cases of Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, and Dominguez v. American Casualty Co., 217 La. 487, 64 So.2d 744, 747, our Supreme Court unequivocably held that there was coverage under the omnibus clause even when the employees authorized to drive the vehicles for specific purposes violated specific general instructions not to remove the vehicles from their night-time parking places by removing same for personal purposes later in the evening, during which the accidents resulted.[3] See also Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9.
In his concurring opinion in the Dominguez case, Chief Justice Fournet stated at 46 So.2d 751:
"The language in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; and that where the language used in the policy is ambiguous, admitting of two constructions, it must be construed in favor of the insured and against the insurer so that the interest of the insured, who has paid a consideration for the indemnity, may be protected";
and again:
"This construction clearly gives effect to the evident intent of the parties, for the omnibus clause was included in their contract for the very purpose of covering the liability of the operator of the car as the unnamed assured, and so that any injured person would be given a cause of action against the insurer for injuries deemed *58 by law to have been caused by the operation of the car." (Italics ours.)
It would appear from the language and holdings of these cases that the operation of a car by anyone who has been given legal control thereof shall be covered under the omnibus clause of any liability insurance policy covering operation of the said automobile. Deviation from instructions given prior to control of the automobile being entrusted to the original permittee were held "immaterial and of no moment", Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, 748. increasingly the concept of a liability insurance policy has been as a protection not only to the named insured, but also to the public. It is regarded not only as insurance carried by the owner, but also as insurance carried on operation itself of the vehicle. See the Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:851 et seq., especially LSA-R.S. 32:872, subd. C(2) accepting an "automobile liability policy" as security after an accident if the owner had in effect such policy "with respect to the motor vehicle involved in the accident."[4]
We further believe the present instance can be distinguished from that of Longwell v. Massachusetts Bonding & Ins. Co., La.App. 1 Cir., 63 So.2d 440, relied upon by defendant-appellee. In Longwell, the driver went out of the route prescribed by his employer and picked up a girl friend, to whom he entrusted operation of the vehicle. It might be said that under the facts and circumstances therein it was so far outside the contemplation of the owner in entrusting the original permittee (the truckdriver) with the truck that you could not imply any delegation of permission to his girl friend to drive on this mission of pleasure far removed from the business purposes for which the truck had been entrusted to the original permittee.
But in the present instance, the owner of the car knew that his daughter and her infant child was to be accompanied on the trip to New Orleans by her friend, Miss Deitz. Here the transfer of drivership took place when the infant's crying required the attentions of its mother. Had this infant required the attention of the matron rather than the maiden en route to New Orleans, surely it was not contemplated that they would park on the highway until the daughter had performed her maternal functions. Surely it was contemplated that for this reason, or even were the daughter tired or beset by headache or for any other reason was unable or unwilling to continue driving, that Miss Deitz would take the wheel so that the journey could continue, rather than that the vehicle would be immobilized until such time as the named insured's daughter was able or willing to return to the wheel. Under these circumstances, despite the alleged general instructions given at some indefinite time in the past not to allow others to drive, we feel that special permission may be fairly implied consenting for the original permittee to let her companion drive. See Boudreaux v. Cagle Motors, La.App. 1 Cir., 70 So.2d 741. It may be added that Miss Deitz was driving because the original permittee had requested her to do so in order that the original permittee might attend to her child, and therefore in a sense her driving was for the benefit of the original permittee.[5] *59 As the dissent in the Longwell case indicated, the "omnibus" clause also provides that the "word `insured' includes * * * any person * * * legally responsible for the use" of said automobile, providing such use is with the consent of the named insured. It is entirely probable that the daughter of the named insured (whom defendant admits had permission to operate the car) had such legal control of the car as to render her liable for the use also, Monroe v. Heard, La.App., 1 Cir., 168 So. 519, especially since the accident occurred while both girls were jointly engaged in completion of one of the dual errands for which they had made the trip to New Orleans.
But we prefer to rest our ruling herein on the holding that the actual use of the automobile on the occasion of the accident was with the permission of the named insured, such use being within the coverage of the omnibus clause under the unambiguous wording of the policy as interpreted by the Supreme Court of Louisiana.
Negligence:
We do not feel that there is any serious question as to the negligence of the driver of the insured's vehicle. The collision occurred when the left rear of Brooks' car was struck by the right front of the car insured by defendant and driven by Miss Deitz. Brooks had pulled alongside a parked, car in order to back into the curb to park in a space in back of this parked vehicle. He had signalled his intention to stop as required by LSA-R.S. 32:236 and had actually stopped.
Some effort was made on cross-examination to produce information that he had suddenly stopped in front of the oncoming vehicle insured by defendant, so as to violate LSA-R.S. 32:236, subd. A; but defendant's driver Miss Deitz, as well as the passenger in the car (Mrs. Moreau), testified that the car had slowed to park sufficiently in advance of them for Miss Deitz to know its intentions, but Miss Deitz continued on and had actually pulled to her left to pass the car when in front of her a third car pulled from a sidestreet into her left lane, thus blocking her path around plaintiff's vehicle and causing her to be unable to avoid striking the latter vehicle and causing the injuries complained of.
Whether as Miss Deitz testified plaintiff's vehicle had actually commenced to back into the space, or whether as plaintiff testified he had not yet commenced to back, is in our view immaterial; since in either event, Miss Deitz did not have her car under such control or had not maintained such lookout as to avoid striking the car in front of her, nor had she ascertained that her left lane was free of traffic for sufficient distance ahead to permit an attempt to pass on the left; see LSA-R.S. 32:233, subd. B.
Further, her speed appears to have been excessive under the circumstances. The investigating police officer testified that she had stated her speed at the time of the accident was 35 m. p. h. (the municipal speed limit at the site of the accident was 25 m. p. h.), and although she "doubted" she was going at that speed, she did not deny that she may have so informed him.
Quantum:
As a result of being thrust against his steering-wheel by the impact, plaintiff Brooks sustained a dislocation (displacement) of the "right sternonavicular joint" (where the collarbone joins the breastbone). He was not hospitalized, but his arm was strapped against his chest in an effort to immobilize the joint for about two weeks, during which period Brooks was under treatment by an orthopedic specialist, Dr. Thomas Campenella. At the end of that period, it was Dr. Campenella's opinion that conservative treatment could not cure this dislocation, and that a minor operation was necessary (with estimated total medical cost, including hospitalization, surgery, etc., being $500; estimated disability thereafter being eight weeks). Brooks was not willing to undergo this operation. Brooks kept his arm in a sling for about six weeks after this.
*60 At date of trial about ten months later, both Dr. Campenella and also Dr. J. Willard Dowell, an orthopedic specialist testifying for defendant-insurer, were in agreement that the dislocation of the joint produced a disability of 5-10% of the arm as a whole, based upon the possibility that Brooks would suffer pain in a few positions, especially on the position involved in heavy overhead lifting. Dr. Dowell felt that the condition might be attributed to an earlier collarbone injury, but the testimony of Dr. Campenella and lay testimony that Brooks never complained of his arm or shoulder prior to the accident preponderate against this hypothesis.
Brooks himself, corroborated to some extent by his stepfather who was also his employer, testified that his arm troubled him in driving, lifting, and various other activities, but the medical testimony indicates this unlikely; and defendant produced witnesses who saw Brooks performing routine duties at a filling-station owned by his stepfather at which he was the sole employee, such as changing tires, lifting hoods, greasing cars, etc. We are unable to hold that plaintiff has proved by a preponderance of the evidence any actual discomfort resulting from the injury which in any practical way interferes with his earning a living, or in fact any painful condition of the arm and shoulder caused by the injury to the joint. On the other hand, the fact that this defective condition of the joint results from the accident renders it compensable.
Evaluation of an injury such as this is extremely difficult, especially since an appellate court does not have the benefit of seeing the lay witness and the allegedly injured person face to face. Evaluation of course depends on all the facts and circumstances involved. Taking into consideration that according to the testimony this condition must have been painful for at least two weeks and somewhat uncomfortable for at least six weeks thereafter, that the present results of the injury are minimal, but that pain may result on heavy overhead lifting; that the condition is permanent, although it may be relieved by surgery; and including all the incidental damages claimed for the injury, such as shock and pain and suffering and an allegedly loosened tooth; we feel that an award of $3,000 for this item of general damages is justified.
Special damages proved by the record are: Medical expenses resulting from injury (Dr. Tanna, $25; Dr. Campanella, $150; Baton Rouge General Hospital, $44), total: $219. The loss of wages in a former employment resulting from the injury appear to be at the rate of $75 per week, based on his earnings prior to the accident, for a contested period of time. Taking the medical and lay evidence into consideration, we feel that a period of 8 weeks is the most that plaintiff has proved by a preponderance of the evidence, or $600 for this item of loss of wages.
Decree:
For the above and foregoing reasons, the judgment of the trial court herein is reversed, and it is ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Enman D. Brooks, and against defendant, Delta Fire & Casualty Company, in the full and true sum of $3,819, with legal interest thereon from date of judicial demand until paid. Defendant-appellee is further taxed with all costs of these proceedings and of this appeal, including the fees of the experts for testifying, which are set as follows: Dr. J. Willard Dowell, $50; Dr. Thomas Campanella, $50.
Reversed and rendered.
LOTTINGER, Judge (dissenting).
Due to our holding and the refusal of the Supreme Court to grant writs in the case of Longwell v. Massachusetts Bonding and Ins. Co., La.App., 63 So.2d 440, I respectfully dissent from the majority herein.
NOTES
[1] The evidence to this effect appeared to us vague and ambiguous, and was somewhat reluctantly educed on direct examination. However, the District Court, with its opportunity to see and hear the witnesses, found this testimony credible, and we are unable to find manifestly erroneous his conclusions on this matter of fact.
[2] See 45 C.J.S., Insurance, § 829, p. 898: 
"Under other authority, however, permission to use the car in the first instance is permission within the omnibus clause, regardless of the use to which the car is actually put thereafter, so that insurer is liable even if the accident occurs while the car is being used in a manner not embraced within the limits of the permission given, or even in a manner which violates an express prohibition by insured." Cited in support of this text are: Parks v. Hall, 189 La. 849, 181 So. 191, and Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, and other Louisiana cases. See also extremely comprehensive Comment by Mr. Ben R. Miller, a leader of the Louisiana bar and member of the Louisiana Law Institute, "The Omnibus Clause", 15 Tulane Law Review 422.
[3] As stated by our brothers of the Orleans Court of Appeal in Sun Underwriters Ins. Co. v. Standard Accident Ins. Co. of Detroit, Mich., La.App., 47 So.2d 133, where a chauffeur used the automobile of his employer (the named insured) at night without her knowledge and in violation of her general instructions, and it was held servant had implied permission:

"In Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, 748, the Supreme Court again considered this question and, with two justices dissenting, held that initial permission is all that is necessary and that there is coverage, regardless of the use to which the car may be put", 47 So.2d 137, and
"We feel that the established jurisprudence requires a holding that the permission to use the car at all makes the omnibus clause applicable to practically any subsequent use to which the car may be put"; 47 So.2d 139.
[4] Appellant has cited to us LSA-R.S. 32:900 concerning certain requirements of "Motor Vehicle Liability Policies", required after an operator has been cast in judgment which is unsatisfied. For the reasons more fully discussed in Kennedy v. Audubon Insurance Company, La.App., 82 So.2d 91, such requirements are not applicable to the "automobile liability policy" which an owner or operator may post as security under LSA-R.S. 32:872 to avoid suspension of his license and/or registration until his liability or absence thereof is determined.
[5] At Longwell v. Massachusetts Bonding & Ins. Co., La.App., 63 So.2d 440, at page 443, "The initial permission given by the named assured to an original permittee includes, according to the better view, the use of the automobile by a second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee."