70 So.2d 741 (1954)
BOUDREAUX et al.
v.
CAGLE MOTORS et al.
No. 3787.
Court of Appeal of Louisiana, First Circuit.
January 29, 1954.
Rehearing Denied March 22, 1954.
*742 Lawes, Hickman & Brame, Lake Charles, for appellants.
Russell T. Tritico, Lake Charles, for appellees.
MILLER, Judge ad hoc.
This suit for personal injury and property damage arose out of an automobile collision which occurred August 17, 1951 at the intersection of Enterprise Boulevard and Eighth Street in Lake Charles, Louisiana.
The plaintiffs claim that the accident which resulted in the damages sustained by them were occasioned when Sammy Monticello, the minor son of Anthony Monticello, negligently drove a 1950 Plymouth owned by Joe M. Cagle, d/b/a Cagle Motors, into a vehicle owned by plaintiff Castex Boudreaux and then being driven by his wife, Lydia Boudreaux, the other plaintiff. The suit was filed against Joe M. Cagle, d/b/a Cagle Motors, and his insurer, Employers Liability Assurance Corporation, Limited, and Anthony Monticello and his insurer, The Fidelity and Casualty Company of New York.
Joe M. Cagle, d/b/a Cagle Motors, was dismissed from this suit on an exception of no right or cause of action because of the absence of an allegation that at the time of the collision Sammy Monticello was about the business of Cagle Motors. The suit was then tried on its merits against Cagle's insurer, Employers Liability Assurance Corporation, Limited, Anthony Monticello and his insurer, Fidelity and Casualty Insurance Company of New York. The Lower Court, without written reasons, concluded that the Employers Liability Assurance Corporation, Limited, alone was liable for the negligent action of Sammy Monticello and rendered judgment in favor of Mrs. Boudreaux for $1,200, and in favor of Mr. Boudreaux for $830. It is from this judgment that the Employers Liability Assurance Corporation, Limited, is prosecuting this suspensive appeal. Plaintiffs, Castex Boudreaux and Mrs. Lydia McBride Boudreaux, have answered defendant's appeal *743 by requesting that the judgment be increased to $14,500 as to Mrs. Boudreaux and to $1,527.76 as to Mr. Boudreaux.
Counsel waived oral argument and the case was submitted on written briefs. Defendant rests on one ground to reverse the Lower Court. Its position is that there is no liability because at the time of the accident, Sammy Monticello was not operating the 1950 Plymouth with the consent of its assured, Joe M. Cagle, d/b/a Cagle Motors.
The facts are that Mr. Ray Hollier, who was in charge of Cagle Motors in the absence of Joe M. Cagle, loaned the Plymouth which was involved in the accident to Anthony Monticello (father of Sammy) to replace Mr. Monticello's Chrysler which was brought in for extensive repairs. The repairs were to be completed by the afternoon of the next day, at which time the Plymouth was to be returned. Mr. Monticello's version of the conversation with Mr. Hollier at the time the Plymouth was loaned, was:
"A. There was no conversation. I asked him did he have a car that I could use until mine would be out of the shop. He looked out on the lot and said, `Use that Plymouth over there'.
"Q. Was there any mention made by you that your son, Sammy Monticello, or anyone other than you personally were going to use that car? A. Well we didn't discuss anything like that.
"Q. As I understand your testimony you simply asked Mr. Hollier if he had a car you could use while yours was being repaired and he then pointed to a car on the lot and said you could have that one? A. Now, I will say this, now. As I drove off the lot, before I got off of Cagle's grounds, I run across Bob Coleman. He is an employee for Cagle. I asked Bob, I said, `Bob, do you all have insurance on these cars?' He said, `Yes, Travelers.' If he had told me he didn't have insurance on the car I never would have used it."
Mr. Hollier's recollection of the conversation was:
"Q. Did you see him (Mr. Monticello) at any time on the occasion when his automobile was being repaired? A. Yes.
"Q. What was the occasion for you seeing him at that time? A. My occasion to talk to him was that Mr. Cagle was out of the place at that time and he needed a car.
"Q. Mr. Monticello needed an automobile? A. Right.
"Q. Did he ask you whether he could have an automobile or not? A. Right.
"Q. What did you tell him? A. Why, I let him have a car.
* * * * * *
"Q. And at that time did any conversation between you and Mr. Monticello take place as to who was going to use the automobile? A. Mr. MonticelloThe conversation was this: Mr. Monticello wanted a car to drive back and forth to his place of business while his car was in our shop being repaired.
"Q. Is that exactly what he asked you? A. Yes, sir.
"Q. In those words? A. I would say in the exact words. In other words, he needed a car to drive to go back and forth to his job while his car was in the shop."
This conversation took place on August 16, and on the next day Mr. Monticello sent his son Sammy to return the Plymouth and pick up the Chrysler. On his way to Cagle Motors, Sammy picked up Archie Solari and Jimmy Solari, whose home was on the route from the Monticello home to Cagle Motors. The accident occurred two blocks from the Solari home.
The defendant's liability, if any, is under the so called "Omnibus clause" of the policy insuring Joe M. Cagle, d/b/a Cagle Motors. The pertinent part of the omnibus clause reads as follows:

*744 "* * * the unqualified word `insured' includes the named insured and also includes * * * any person while using an automobile covered by this policy, and any person * * * legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

The precise issue for decision at this moment is:Can an original permittee, who has been loaned a replacement car to use while his car is being repaired, delegate this authority to a second permittee so as to bring the use of the car by that person within the protection of this clause of the policy where the initial permission was silent as to the question of delegation of authority and where the second permittee was operating the car in the interest of the first permittee?
Our answer to this question is in the affirmative.
The authorities on this point were recently reviewed by this court in the case of Longwell v. Massachusetts Bonding & Insurance Co., 63 So.2d 440. In that case a truck was entrusted by Trosclair to Trahan with instructions to deliver a load of shrimp to New Orleans. On the return trip Trahan made a side trip to meet one Ida Mae Smith to whom he entrusted the operation of the truck and while she was driving same with Trahan seated next to her she drove into plaintiff's house causing the damage complained of. In that case Trosclair's uncontradicted testimony was that his positive instructions to Trahan were never to let anyone else drive his trucks.
Although we expressly stated in the Longwell case that in view of the holding of our Supreme Court in the case of Waits v. Indemnity Insurance Co., 215 La. 349, 40 So.2d 746, 748, the matter of instructions or violation thereof appears to be immaterial insofar as deviation from his employment is concerned, this is not true where the issue is drawn about the problem of the first permittee authorizing a second permittee to operate the vehicle. It is our opinion that the disregarding of instructions insofar as permitting another to drive when such had been forbidden is decisive of the issue raised in the case at bar and the Longwell case. The Waits case was concerned with whether or not permission to use a vehicle during working hours could be extended to permit him to use the vehicle after working hours. In that instance our Supreme Court held that whether there had been a deviation from the instructions were immaterial and of no moment, and judgment was rendered against the insurer under the omnibus clause.
In the Longwell case we were impressed with the fact that the insured's driver had only discretion and control for the singular and specified purpose of making a trip to New Orleans and returning. The present case is distinguished from the Longwell case in that in the latter case the original permittee was expressly prohibited from permitting anyone to drive the vehicle involved in the accident. It is further distinguished in that in the present case the second permittee was about the business of the original permittee and the vehicle was a substitute for the family car.
Counsel for appellant has cited and relies upon the case of Monroe v. Heard, La. App., 168 So. 519 and the citation to Blashfield referred to therein which he contends is controlling here. In the Monroe suit the owner of the car, Miss Heard, loaned it to a Mrs. Perkins, who apparently had a date with a Mr. Borsum, who was driving at the time of the accident. This Court held that in the absence of showing that the owner consented to Mr. Borsum's operation of the car, there was no liability in the insurance company for the injury caused by the negligence of Borsum. Here the situation is different. In the present case, when Anthony Monticello left his Chrysler at Cagle Motors to be repaired, he was loaned an automobile as a substitute. He testified that he would not have taken this substitute had not Cagle Motors carried insurance on it. The delivery was handled in a cursory and routine manner, nothing having been said as to who might *745 drive the substitute car. In the present case, considering the wording of the permission and the surrounding circumstances, we find that the delegation of authority to this second permittee was permitted by implication. We are of the opinion that the original permittee in this case had more or less general discretion and continuous control over the substituted or replaced car so that he could validly grant permission to his son to use the same, particularly since said use was for the benefit of the named assured and the original permittee. The Louisiana cases on this point are summarized at 5 A.L.R.2d pp. 647, 648. See also American Jurisprudence, Volume 5, Automobiles, par. 535.1 (New Text)By Permittee of Named Insured.
"* * * But the initial permission given by the named assured to an original permittee includes, according to the better view, the use of the automobile by a second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee. * * *"
Defendant has not complained as to the amount of the award. Plaintiffs, in answering the appeal, pray that the amounts be increased.
The evidence as to Mrs. Lydia McBride Boudreaux's injuries was given by Mr. and Mrs. Boudreaux and Dr. Lucas L. DiGiglia, who examined Mrs. Boudreaux in his office on August 17, 1951, the day of the accident and treated her for many months thereafter. Mrs. Boudreaux was able to call at Dr. DiGiglia's office for all of the treatments. The day after the accident, Mrs. Boudreaux's mother suffered a heart attack and Mrs. Boudreaux, with Dr. DiGiglia's permission, was driven to Crowley, Louisiana, to be with her mother during the illness. While in Crowley, Mrs. Boudreaux was treated by Dr. Morgan, but he did not testify. After several days in Crowley Mrs. Boudreaux was driven back to Lake Charles.
Her most serious injury was a large hematoma and bruised muscles in the left leg and also bruises on the left elbow. She was given penicillin shots to prevent infection from the large hematoma, but her principal treatment consisted of diathermy treatments and bed rest. She was ordered to remain in bed for from four to six weeks, but she did get up and with the help of a crutch or cane was able to go to Dr. DiGiglia's office for her diathermy treatments. She continued taking diathermy treatments for several months.
Mrs. Boudreaux complained of headaches for some time but she had recovered from this some months before the trial. Dr. DiGiglia on checking his chart did not find where he had prescribed for headaches. There was also some evidence that Mrs. Boudreaux suffered a traumatic bursitis condition, but this is not forcefully urged. The costs paid by Mr. Boudreaux were: Dr. DiGiglia's fee of $100; medicine costs were $27.50; and repairs to the Boudreaux automobile of $702.50. Thus, the $830 awarded to Mr. Boudreaux appears correct. We believe that the sum of $1,200 awarded Mrs. Boudreaux will adequately cover her injuries and the resulting pain and suffering.
For the reasons assigned, the judgment of the lower court will be affirmed, all costs of this appeal to be paid by the defendant-appellant, Employers Liability Assurance Corporation, Limited.
Judgment affirmed.
CAVANAUGH, J., recused.