135 So.2d 63 (1961)
Rosa Mae HURDLE et al., Plaintiffs-Appellees and Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant, and
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellee.
No. 9598.
Court of Appeal of Louisiana, Second Circuit.
November 22, 1961.
Booth, Lockard, Jack, Pleasant & LeSage, Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellants.
Mayer & Smith, Shreveport, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
GLADNEY, Judge.
This is a proceeding filed by Mrs. Rosa Mae Hurdle individually, and for the use and benefit of the minor, Jane Hurdle, against State Farm Mutual Automobile Insurance Company and St. Paul Fire & Marine Insurance Company, for the purpose of recovering a judgment previously rendered in plaintiff's favor against Robert F. Bailey for damages for personal injuries sustained by Jane Hurdle, who was struck by a vehicle owned by Charles W. Nicholson, but driven by Robert Bailey. The case was tried and resulted in a judgment in favor of the plaintiff, against State Farm Mutual Automobile Insurance Company with dismissal of plaintiff's claim against *64 St. Paul Fire & Marine Insurance Company as a surplus insurer. State Farm prosecuted a suspensive appeal and plaintiff perfected a devolutive appeal from the judgment insofar as it rejected her demands against St. Paul.
The sole issue herein presented is whether under the proven circumstances, we should hold that the use by Robert Bailey of the Nicholson automobile was with the permission of the named insured.
In order to find that Bailey was an insured under the terms of the State Farm policy on the Nicholson car, it is essential that he be included among those expressly insured therein. The pertinent provisions contained in the policy constitute what is well known as the omnibus clause, defining an insured to include: "Any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured."
The trial judge in his stated reasons for judgment, said:
"We do not view this case as one involving the question of a permittee authorizing or designating another permittee to drive an owner's automobile so as to hold the owner's insurer liable. But, on the contrary, we consider that the owner had given the driver who was involved in the accident general permission to use the automobile whenever the owner was not using it, and that this authorization did not have to be granted specifically each time the third party used the automobile."
The evidence as adduced upon the trial of the case is essentially uncontroverted and the pertinent facts are easily resolved. Jane Hurdle was injured on July 12, 1958, in Cass County, Texas, when, while walking along the highway, she was struck by the car driven by Robert Bailey, who was driving a 1956 Ford belonging to Charles W. Nicholson, and insured by the defendant, State Farm Mutual Automobile Insurance Company. Bailey was a minor residing with his father, who was covered by two standard automobile policies, both issued by the defendant, St. Paul Fire and Marine Insurance Company, which contain provisions restricting liability therein to excess insurance over "any other valid and collectible insurance."
Charles W. Nicholson, James M. Smith and Robert Bailey were personal friends, all aged from nineteen to twenty-one years, and residing within a few miles of Rodessa, Louisiana, and only a short distance from McCloud, Texas, near the site of the accident. Nicholson was a year older than Smith, and the two were brothers-in-law, Nicholson having married Smith's sister. They were close personal friends. Also, Bailey and Nicholson were good friends, although Smith had known Bailey longer. All three went around together, at times in the same automobile.
At the time of the accident, Nicholson owned the 1956 Ford and James Smith a 1955 Oldsmobile. Smith and Nicholson frequently exchanged cars and as hereinafter shown, no restricted use was placed on either when using the other's vehicle. On the afternoon of July 12, 1958, Nicholson borrowed Smith's car and left his own for Smith to use that night. Later that evening Smith, his date, and Robert Bailey drove to a movie house in Vivian. After they arrived at Vivian, Smith loaned Nicholson's automobile to Bailey, in order that the latter could go by and see his girl friend at McCloud, Bailey being instructed to return and pick up Smith and his date at the theater. The accident occurred while Smith was returning to Vivian.
Nicholson testified that he and Smith had on many occasions prior to July 12th, used each other's automobile without either party imposing any restriction as to the use of the car; that he had never objected to Smith letting others use his automobile, and that after the accident he said to Bailey: "I just asked him did he get the car from James, and he said `Yes' James let him use the car."
*65 Several weeks prior to the accident Nicholson, Smith and Bailey were present at Smith's house and at that time he suggested that either could use his car. Nicholson testified:
"Q. Will you state whether or not you have ever made the statement that James Smith or Robert Bailey could use your car when they wanted to if you weren't using it at the time? A. Yes.
"Q. Will you state when did you make that statement? A. I don't remember.
"Q. Was it before or after the accident on July 12th of 1958? A. It was before the accident.
"Q. To whom did you make that statement? A. To James Smith and Bobby Bailey.
"Q. Where did that conversation take place, if you remember? A. In James Smith's house.
"Q. What was said at that conversation?
A. I told them that if they ever wanted to use my car just ask me and if I wasn't using it at the time I would let them use it."
The foregoing testimony of Nicholson, no doubt, prompted the trial judge to hold that Nicholson had given Bailey "general permission to use the automobile whenever the owner was not using it, and that this authorization did not have to be granted specifically each time the third party used the automobile."
Smith testified that Nicholson had never restricted his use of the car and had never instructed him not to let anyone else drive the Nicholson car. It was his understanding that either could use the other's car as if it were his own. He testified:
"A. I let him use mine as he like just as he let me use his. Just use his own judgment. * * * If he saw fit to let anyone drive it, it would have been all right with me.
"Q. What was your understanding as to the manner in which you could use Nicholson's car?
"A. Well, it was always my understanding I could use it as I saw fitas if it were my car."
Smith said also that he had permitted a girl to drive Nicholson's car on several occasions and Nicholson had not registered any objection.
Bailey's testimony is consistent with that of Nicholson and Smith. He said Nicholson had never told him he could not use his car, but that on the contrary, had indicated that he could use it if he so wished. He also testified that on one or two occasions he had driven Nicholson's car and the latter had not objected.
There can be no doubt these three young men were close friends and were frequently in each other's company. Apparently, Smith and Nicholson were very close and either could do with the other's car as he pleased. The only restriction, if any, imposed by Nicholson is evidenced by his statement to Bailey and Smith several weeks prior to the accident when he told them that if they ever wanted to use his car they could ask him and if he was not using it at the time, he would let them use it. We do not construe this expression as did the district judge, who interpreted it as a continuing permission to Bailey to use his automobile whenever he was not using it. Rather, we think it implies that Nicholson expected to be asked before his automobile could be taken. It is our opinion that the aforesaid statement was not an expressed permission for Bailey to borrow the Nicholson car without permission from either Nicholson or from Smith, while the Nicholson car was in Smith's possession. Rather we think the question is one of implied permission by Nicholson to Bailey, if consented to by Smith, when the Nicholson car was in the possession of Smith.
*66 The following authorities have been cited as supporting the position of the appellee: Davies et ux. v. Consolidated Underwriters, La.App., 6 So.2d 347 (2d Cir. 1940); 199 La. 459, 6 So.2d 351 (1942); Boudreaux et al. v. Cagle Motors et al., La.App., 70 So.2d 741 (1st Cir. 1954); Talbot v. Allstate Insurance Company, La. App., 76 So.2d 76 (2d Cir. 1954); Brooks v. Delta Fire & Casualty Company, La.App., 82 So.2d 55 (1st Cir. 1955); Garland v. Audubon Insurance Company, La.App., 119 So.2d 530 (1st Cir. 1960); Thomas et al. v. Peerless Insurance Company, La.App., 121 So.2d 593 (2d Cir. 1960); Gonzales v. Beaumont Cement Sales Company, La.App., 125 So.2d 785 (4th Cir. 1961); Utica Mutual Insurance Company v. Rollason, 246 F.2d 105 (4th Cir. 1957).
Appellants strongly urge that Rogillio et al. v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961) is controlling and adverse to appellee's contentions.
In order to establish whether or not a driver has permission, actual or implied, to drive the vehicle, all the facts and circumstances surrounding the use of the car must be considered. Talbot v. Allstate Insurance Company, supra. The same ruling is found in Gonzales v. Beaumont Cement Sales Company, supra.
It is also a general rule that permission will be implied when the use of the vehicle inures to the benefit of the named assured and the original permittee. Boudreaux v. Cagle Motors, supra; Thomas v. Peerless Insurance Company, supra. See also 5 A.L.R.2d, pp. 647-648 and Am.Jur. Vol. 5, Automobiles, par. 535.1. Bearing a somewhat close analogy to the instant case are Talbot v. Allstate Insurance Company and Brooks v. Delta Fire & Casualty Company, supra.
In the Talbot case Mr. and Mrs. Turley were out-of-town visitors to their relatives, the Taylors, who lived in Shreveport, Mrs. Taylor and Mrs. Turley being sisters. On the second day of the visit the two husbands left in the Taylor automobile and later Mrs. Taylor used the Turley automobile to fetch her maid, and while on this journey the accident occurred. Mrs. Taylor did not have the express consent of Mr. Turley to use the automobile, but the latter testified he would have had no objection had he been there if she had asked him. The plaintiff asserted Mrs. Taylor had permission under the omnibus clause and upon consideration of all the circumstances bearing upon the question of permission, the relationship of the parties, the fact they were house guests, the use of the other automobile, and the absence of any objection by Mr. Turley. We held there was an implied permission granted by the owner.
The Supreme Court denied writs in Brooks v. Delta Fire and Casualty Company which presented a case wherein the father loaned his car to his daughter to go from Baton Rouge to New Orleans and during the trip the daughter requested her accompanying friend to drive while she attended to her six weeks old baby, and the collision occurred. Coverage was accorded under the omnibus clause, not because the companion was the permittee, but because she was acting for the permittee who was present and actually had direction and control of the car due to a slight emergency. The Supreme Court observed that the circumstances which occurred should have been foreseen by the named insured, and consequently the consent of the named insured was implied.
In Utica Mutual Insurance Company v. Rollason, supra, the question was whether or not the son of a manager for the named insured was driving with permission. The finding of the court was that the employer in furnishing the car had accorded more or less general discretion to its employee to use it. The court stated:
"If an insured automobile is left by the owner with someone for general use and he in turn permits its use by another, the use is deemed to be with the permission of the owner." [246 F.2d 110.]
*67 Another authority cited by appellant is Garland v. Audubon Insurance Company, supra, but we find this authority inapposite forasmuch as the circumstances indicated the named insured, Bearry, had given unlimited control and possession of the car to his wife, from whom he was living separate and apart, without any restriction as to its use by her individually or by a permittee with her authority or consent, and was in fact, the real insured.
The foregoing authorities appear to be in harmony with the doctrine announced in Parks v. Hall, 189 La. 849, 181 So. 191, 194 (1938) which hold that initial permission, express or implied, is sufficient to constitute the operator of a vehicle an insured under the omnibus clause for the reason that the owner of a vehicle should reasonably anticipate and foresee deviation and that by placing the vehicle in the control of the permittee, he impliedly consents to its extended use. Therein the court stated:
"The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car. * * *"
Counsel for appellants takes the position that the instant case must be governed by Rogillio et al. v. Cazedessus et al., supra. Therein William J. Oliver, Jr. loaned his Chevrolet sedan to his son, William Oliver III, who left it in the driveway of the Cazedessus residence and young Oliver left with "Lad" Cazedessus, to attend a dance. Before leaving, Michael Cazedessus, aged fifteen, an unlicensed driver, asked John Oliver if he did not want to leave his car keys, whereupon Oliver tossed the keys to Michael, saying that it might be necessary to move the car. Some time shortly afterward, Michael drove the automobile into the City of Baton Rouge where an accident occurred. The question, as stated in the concurring opinion, was whether under the circumstances the permission of the named insured for the use of the automobile by Michael Cazedessus can be implied from the initial permission to his son.
Counsel for appellant point out that Chief Justice Fournet, as the organ of the court, made the following pronouncement:
"* * * under the express wording of the policies, only the named insured or his spouse occupying the same household may constitute one a permittee and thus afford him coverage. Needless to say, neither Mr. nor Mrs. Oliver granted Michael Cazedessus permission of any kind. He was therefore not afforded coverage under the clause "any other person using such automobile.'" [241 La. 186, 127 So.2d 737.]
The meaning of the foregoing statement is not that express permission must be given to the driver by the named insured, but as set out in the concurring opinion "for the permission to "carry over' to Michael Cazedessus, it must be established by a preponderance of the evidence that he had permission by young Oliver to use the automobile." The circumstances indicated that at no time did Michael receive permission to drive to Baton Rouge or to operate the car on the public highways.
The Supreme Court, therefore, has not changed our jurisprudence with respect to the extent and effect of implied permission from the named insured as reflected in the authorities discussed above.
Counsel for appellant make the further contention that swapping cars for the night cannot have the effect of enlarging the permission granted by the owner or the named insured, and that such an exchange of vehicles could not in any way serve to alter the terms of the insurance contract which required permission of the named insured. As we see it the only relevancy of the argument is its relationship to the *68 consent vel non given to young Bailey. It is necessary, we think, to consider all the circumstances which bear upon the granting or withholding of permission by Nicholson.
The evidence herein, we think, discloses clearly that Smith was granted permission to exercise whatever use he desired of the Nicholson car while it was in his possession and this included the right to let others use it. Consequently, Bailey had the implied permission of Nicholson to use the car on the night of July 12th, although such permission was, in a sense, carried over through Smith. Although Nicholson did, several weeks prior to the accident, tell Bailey and Smith that if they ever wanted to use his car to ask him, and if he was not using it, he would let them use it, we do not think this of itself constitutes an express and direct permission from Nicholson to Bailey. We think it was merely one of the circumstances which indicated the generality of his permission to Smith for the use of Nicholson's car while it was in his possession. It is therefore, our holding that under the circumstances as established in the record, Robert Bailey had the implied permission of Nicholson to use his car on the night of the accident.
The policies issued by the St. Paul Fire and Marine Insurance Company in favor of its insured, Raymond Bailey, the father of Robert Bailey, contain the following clause:
"Other Insurance
"If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."
The trial court properly gave effect to the clause which, in this case, constituted surplus insurance, forasmuch as the policy of State Farm Mutual Automobile Insurance Company affords sufficient coverage to satisfy the judgment of the plaintiff.
For the foregoing reasons, the judgment from which appealed is affirmed at appellant's cost.