136 So.2d 288 (1961)
Willis S. COCO, Jr., Plaintiff and Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellee.
No. 408.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1961.
Rehearing Denied January 18, 1962.
Certiorari Denied February 21, 1962.
*289 Stephen P. Coco, Jennings, for plaintiff appellant.
Gist, Murchison & Gist, by DeWitt T. Methvin, Jr., Alexandria, for defendant appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an action for damages instituted by Willis S. Coco, Jr., individually and as administrator of the estate of his minor daughter, Gayle Coco, arising out of a motor vehicle accident which occurred near Alexandria, in Rapides Parish, Louisiana, on July 3, 1957. At the time the accident occurred, Miss Coco was riding as a guest passenger in an automobile, which was owned by Dr. Eustis D. Wilson and was being driven by Tommy Lamonte, and as a result of the accident she received serious injuries. The suit was instituted against State Farm Mutual Automobile Insurance Company, the public liability insurer of Dr. Wilson, the owner of the car.
While the suit was pending in the trial court, Miss Coco became of legal age of majority and thereupon she was substituted as a party-plaintiff in the suit. After trial of the case on its merits, judgment was rendered by the trial court in favor of the defendant, rejecting plaintiffs' demands, and plaintiffs have appealed from that judgment.
The trial judge, in a well-written opinion, correctly set out the facts in this case as follows:
"At the time of the accident Dr. Wilson resided in Alexandria, although he was then temporarily absent from the state for the summer while he was pursuing a specialized course of study. His family consisted of a wife and *290 three minor sons, one of whom was Stephen H. Wilson, then seventeen years of age, and who was attending the summer session of Bolton High School in Alexandria. On the morning of July 3, 1957 Stephen H. Wilson drove to school in his father's 1950 Nash Rambler automobile and left it there to be picked up by his friend Tommy Lomonte, then aged eighteen, who, by pre-arrangement between these boys, was to drive the car to Lafayette and get Miss Marilyn Masden, Stephen's girl friend and a student at Southwestern Louisiana Institute, and return her to Alexandria. Pursuant to this arrangement, Lomonte went to Bolton High School, obtained the car and drove it to Lafayette. Miss Masden, being a room-mate of Miss Coco, invited the latter to accompany her and Lomonte to Alexandria. Although Miss Coco had made other arrangements to travel to Alexandria, she decided to make the trip with Miss Masden, and the three young people left Lafayette together. The accident occurred near Alexandria when Lomonte lost control of the vehicle, it then skidding along and across the highway into a ditch where it overturned.

* * * * * *
"Dr. Wilson had purchased the Nash Rambler approximately a year before the accident. Prior to and at the time of that occurrence he owned three other vehicles, a Cadillac which his wife used, a Chevrolet which he drove, and a Chevrolet truck which was used in part for utility purposes. The Nash Rambler was purchased primarily for the use of Eustis Wilson, Jr. in going to and from Louisiana College in Pineville where he was a student, although it was used as an additional family automobile. The Chevrolet truck was used for utility purposes and in hunting and fishing. Under the arrangement at the Wilson household any member of the family (exclusive of the third child who was too young to drive) was allowed to use any of the four vehicles, although it was customary for each person to use the vehicle assigned for his use. At the time in question Mrs. Wilson was ill and the two older boys were doing the driveing for the family in Dr. Wilson's absence. On the day of the accident Eustis, Jr., was driving the Chevrolet truck and, as has been stated, Stephen had the Nash Rambler.
"The testimony of Dr. Wilson is that before leaving for the summer he had specifically assigned the Chevrolet truck to Stephen for his use in attending school. Further, he repeated the instructions he had previously emphasized to the effect that neither boy was to permit any third person to drive any of his vehicles."
In our opinion there is little doubt as to plaintiffs' right to recover if the insurance policy issued by defendant actually covered the operation of the automobile at the time of the accident. Lamonte, the driver of the insured car, turned a corner at an excessive rate of speed, estimated by him and another passenger in the car at 40 miles per hour, and as a result thereof he lost control of the vehicle and it turned over in a ditch. Lamonte's turning at too rapid a speed and his consequent loss of control of the car constitutes negligence which in our opinion was the proximate cause of the accident. His passenger, Miss Coco, was not contributorily negligent for failing to anticipate that he would negligently turn the corner and lose control of the automobile. See White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Bordelon v. Couvillion, La.App. 3 Cir., 130 So.2d 453; Rodriguez v. State Farm Mutual Automobile Insurance Company, La. App. 1 Cir., 88 So.2d 432 (Cert, denied).
The principle question presented in this case, therefore, is whether Lamonte was an "insured" under the omnibus clause of the liability policy which had been issued *291 by defendant to Dr. Wilson, the owner of the car. The omnibus clause, or the pertinent provision of that policy, reads as follows:
"Definition of Insured.
"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. * *." (Emphasis added.)
According to the provisions of this policy Lamonte cannot be considered as an "insured" unless he was using the automobile with the permission of Dr. Wilson, the named insured, or his spouse. Plaintiffs do not contend that Mrs. Wilson ever gave any such permission, and the evidence does not show that she did, so the issue presented is whether Lamonte was using the Nash automobile with the permission, express or implied, of Dr. Wilson.
Although there is some evidence to the effect that Dr. Wilson did not give his son, Stephen, permission to use the Nash automobile at all, we think the preponderance of the evidence is to the effect that he had given Stephen more or less general use of and control over the Nash automobile, except that he was specifically prohibited by his father from ever permitting anyone else to drive that car or any other vehicle which he owned.
Dr. Wilson testified that he had never given Lamonte permission to drive the Nash automobile, and that he had no knowledge whatsoever of the fact that Lamonte had ever previously driven the car or that he was intending to drive it on the day of the accident. Dr. Wilson further testified that he had repeatedly instructed his two sons that they were not to let anyone else drive any of his automobiles at any time. He repeated these instructions to them immediately before he left Alexandria to go to Maine, where he was pursuing his specialized studies, and then shortly after he arrived in Maine he wrote to his oldest son, Eustis Wilson, Jr., instructing him that he was not to permit Stephen to drive any car other than the truck, and more specifically that "he was not to let anybody else drive the cars."
Although Stephen Wilson admitted that he had allowed young Lamonte to drive the Nash automobile occasionally, he testified that he was always with him when that was done, and that prior to the day of this accident he had never given Lamonte the complete use and control of the car as was done on that day. Stephen further testified that his father had told him on many occasions to not let anyone else drive the car, a part of his testimony to that effect being as follows:
"Q. Did your father ever give you any instructions about other people driving the car? A. Yes. He said never to let anybody else drive it.
"Q. Did he tell you that before he went to Maine? A. He told me that when I first got my driver's license. And this was two (2) years afterwards, and he had repeated it on many occasions.
"Q. On the occasion when you let Tommy Lamonte take the Nash to Lafayette, did you ask anyone in your family for permission to do that? A. No, sir.
"Q. You just did it on your own? A. Yes.
"Q. Did anybody else in your family have knowledge of it? A. No, sir."
Lamonte testified that he had never driven the Nash automobile before that day, *292 except perhaps on occasions when he would drive it around the block at the request of Stephen. He testified that Stephen had never loaned the automobile to him before the day of the accident, and that Dr. Wilson had never granted him permission to use it.
We think the evidence establishes beyond any question that the instructions given by Dr. Wilson to his sons, Stephen and Eustis Wilson, Jr., that no one else was to be permitted to drive the cars, was specific, was repeated frequently and was emphasized by him shortly before the accident occurred. The evidence also convinces us that Dr. Wilson did not at any time have knowledge of the fact that his instructions had ever been violated or that anyone other than his sons had ever driven any of his automobiles. We have examined the record carefully and have been unable to find any evidence which could serve as a basis for holding that Dr. Wilson ever relaxed or modified the instructions which he had repeatedly given his sons, or that he ever impliedly or indirectly consented that Lamonte, or anyone else, other than his two older sons, could drive any of his automobiles.
In spite of the fact that the named insured, Dr. Wilson, had prohibited his sons from allowing anyone else to drive his cars, young Stephen Wilson, in violation of these instructions and without the knowledge of his father, permitted his friend, Lamonte, to use the Nash automobile to perform a mission for him, and while the car was being used by Lamonte for that purpose the accident occurred. Plaintiffs contend that under those circumstances Lamonte was an "insured" under the omnibus clause of the policy. Defendant contends that Lamonte was not an "insured" under the provisions of the policy since he was not using the car with the permission, express or implied, of the named insured or his spouse. Accordingly, defendant takes the position that there was no coverage under the policy at the time the accident occurred.
On the basis of the facts presented in this case the trial judge held that Lamonte did not have the express permission of either Dr. Wilson or his wife to drive the Nash automobile, and that "by no stretch of the imagination can it be said that Lamonte, under the existing factual situation, had the implied permission of either Dr. Wilson or his wife to operate the car." Accordingly, he concluded that Lamonte was not an "insured" under the provisions of the omnibus clause at the time the accident occurred, and that defendant was not liable under the policy.
In the landmark case of Parks v. Hall, 189 La. 849, 181 So. 191, the Supreme Court held that when the named insured has once granted permission to someone else to use the insured vehicle, his permittee becomes an insured under the omnibus clause even though he later ignores the named insured's instructions as to the purpose for which the insured vehicle is to be used. In that case, however, the insured vehicle was being driven by the original permittee of the named insured at the time of the accident, and the only question presented was whether the driver of the car, once he had been granted permission of the named insured to use it, lost that permission by deviating from the instructions which he had received from the named insured as to the purpose for which the vehicle could be used. The rule announced in Parks v. Hall has been applied consistently in later cases. See Waits v. Indemnity Insurance Company of North America, 215 La. 349, 40 So.2d 746; Dominguez v. American Casualty Company, 217 La. 487, 46 So.2d 744; Stanley v. Cryer Drilling Company, 213 La. 980, 36 So.2d 9; See also article by Ben R. Miller in 15 T.L.R., 422.
In each of the cases hereinabove cited, however, the accident occurred while the insured vehicle was being used by a person who had received permission from the named insured, but had later deviated from the instructions given to him by the owner as to the purpose for which the vehicle *293 could be used. None of those cases involved a circumstance such as the one presented here where the vehicle, at the time of the accident, was being driven by a third person who had been allowed to use the insured car by the original permittee.
We think the jurisprudence of this State has been established to the effect that where the original permittee has been granted more or less general discretion and continuous control over the insured vehicle by the named insured, such general permission carries with it the implied consent of the named insured for the original permittee to allow third persons to use the insured vehicle. Under those circumstances, a third person using the vehicle with the permission of the original permittee is considered as having the indirect and implied permission of the named insured to use the car, and thus becomes an insured under the provisions of the omnibus clause. Perrodin v. Thibodeaux, La.App. 1 Cir., 191 So. 148; Boudreaux v. Cagle Motors, La. App. 1 Cir., 70 So.2d 741; Garland v. Audubon Insurance Company, La.App. 1 Cir., 119 So.2d 530 (Cert. denied); Thomas v. Peerless Insurance Company, La.App. 2 Cir., 121 So.2d 593; Donovan v. Standard Oil Company of Louisiana, La.App. 2 Cir., 197 So. 320 (Cert. denied).
In a case, however, where the original permittee has been granted the more or less general use of and continuous control over the insured vehicle by the named insured, but with the specific restriction or prohibition that he is not to permit anyone else to drive it, then we think the general permission granted to the original permittee does not carry with it the implied consent of the named insured that others may be permitted to drive the insured car.
The issues presented in this case are similar to those considered by the Court in Clemons v. Metropolitan Casualty Insurance Company, La.App. 2 Cir., 18 So.2d 228, 232 (Cert. denied). In that case the named insured granted the general use of and control over the insured vehicle to the foreman of his plantation, the only restriction being explicit written instructions to the effect that the original permittee, the foreman, could not allow anyone else to drive the insured vehicle except in an emergency, in which case the foreman's wife was to accompany the third person. The original permittee disobeyed these instructions and allowed a third party to use the insured vehicle, unaccompanied by his wife, in order that the third party might run a personal errand of his own. While doing so, this permittee of the foreman was involved in an accident. A suit for damages was then instituted against the insurer of the vehicle on the theory that in spite of the breach of instructions of the named insured prohibiting the foreman from allowing third parties to operate the vehicle, the third party driving at the time of the accident was doing so with the implied permission of the named insured. The trial court held that the driver of the vehicle was an "insured" under the omnibus clause of the policy, basing its decision largely upon the case of Perrodin v. Thibodeaux, supra. The Second Circuit Court of Appeal reversed the trial court, however, holding that the consent of the named insured for the use of the vehicle at the time the accident occurred could not be implied under the circumstances presented there. The following language was used by the Court:
"Lacaze had permission of the insured to drive the truck, but instead of having the authority to confer permission to Berryman, was forbidden in writing to do so by the insured. * * *

* * * * * *
"* * * It is indeed difficult for us to understand how it could be implied that Arthur Lacaze had general discretion of the use of this truck in face of the undisputed fact that his use of the truck was regulated by very specific written instructions given to him by the owner. * * *.
"* * * the case of Perrodin v. Thibodeaux is not authority for a decision *294 in the case at bar finding Leo Berryman to be an additional insured under the Omnibus Clause in the policy of insurance issued by appellant to Mr. Dey, the owner of the truck, being driven by Berryman at the time of the fatal accident, and the judgment of the lower Court so finding is erroneous and will have to be reversed."
Counsel for plaintiffs, however, have referred us to the cases of Brooks v. Delta Fire and Casualty Company, La.App. 1 Cir., 82 So.2d 55 (Cert. denied); Garland v. Audubon Insurance Company, supra; and Rogillio v. Cazedessus, 241 La. 186, 127 So. 2d 734. He contends that these cases support plaintiffs' position that the driver of the insured vehicle in this case was an insured under the policy when the accident occurred.
In the Brooks case the named insured lent his car to his daughter to drive from Baton Rouge to New Orleans with her baby and a friend. On the return trip from New Orleans, and while running an errand for the friend, the baby started crying and the named insured's daughter asked the friend to drive while she tended to the child. An accident occurred while the friend was driving. The named insured had told his daughter a number of times prior to the accident not to let anyone else drive the insured vehicle. The Court of Appeal, First Circuit, held that in spite of those instructions the driver of the car at the time of the accident was an "insured" under the omnibus clause of the policy because under the circumstances presented there "special permission may be fairly implied, consenting for the original permittee to let her companion drive." [82 So.2d 58] The Court reasoned that the father contemplated that the companion would have to drive during parts of the trip, and consequently that "the actual use of the automobile on the occasion of the accident was with the permission of the named insured." We think the Brooks case is easily distinguishable from the instant suit, because in that case the facts showed that the named insured had contemplated that the automobile would be driven during parts of the trip by his daughter's friend and consequently that he had permitted that to be done. In the instant suit there is no basis whatsoever for concluding that the named insured contemplated that the Nash automobile would be driven by someone other than his two sons, or that he impliedly consented that his son Stephen could permit someone else to use the car.
In Garland v. Audubon Insurance Company, supra, the named insured's wife was given the insured vehicle to use after she became separated from her husband. The wife later permitted a friend to drive the car and it was involved in an accident while being driven by him. A suit was instituted against the husband's insurer, and the question presented was whether the driver of the automobile at the time of the accident was an insured under the omnibus clause of the policy. The court, consistent with the established jurisprudence of this State, held that the driver was using the vehicle with the implied permission of the named insured, and accordingly that there was coverage at the time of the accident. In that case, however, the wife had been given general discretion and continuous control over the insured automobile, and no restrictions of any kind had been imposed with reference to her right to permit others to use the car. Under those facts, and under the jurisprudence which has already been cited, the consent of the named insured for her to allow others to use the car is implied. In the instant suit, unlike the facts in the Garland case, the original permittee had been specifically prohibited from allowing anyone else to drive the car.
In the recent case of Rogillio v. Cazedessus, supra, the named insured permitted his son to use the insured automobile to go to a dance. The son later parked the car in the driveway of the Cazedessus residence, and tossed the keys of the car to 15-year-old Michael Cazedessus, saying that "it might be necessary to move the car. "Young Michael drove the car into the city *295 and became involved in an accident. The Supreme Court held that under those circumstances there was no coverage under the omnibus clause, because the car was not being used with the permission of the named insured. The basis for that decision, as we understand the Court's opinion, is that the tossing of the keys to young Cazedessus did not constitute permission for him to drive the car into the city. We fail to see, however, how the holding in the Rogillio case supports plaintiffs' position here. On the contrary, we think it supports the arguments advanced by counsel for defendant, because the Supreme Court clearly held that there can be no coverage under the omnibus clause unless the person using the insured vehicle at the time of the accident is doing so with the express or implied permission of the named insured.
Although we agree with the results reached by the First Circuit Court of Appeal in the Brooks and in the Garland cases, the Court in each of these cases used language which, incorrectly we think, seems to extend the interpretation of the phrase "permission of the named insured" to apply to anyone who has been given legal control of the car. The Supreme Court, however, in the Rogillio case disagreed with that interpretation. With specific reference to the language used in the Brooks and the Garland cases, the Supreme Court said:
"But counsel for said companies confidently declare that in other cases we have, either expressly or by denying writs to the Courts of Appeal, so extended the interpretation of `permission of the named insured' that it applies to anyone who has been given legal control of the car. with this we cannot agree." (Emphasis added.) [241 La. 186, 127 So. 737]
We can readily conceive of circumstances where the permission of the named insured for a second permittee to use the automobile may be implied, even though the named insured has specifically prohibited the initial permittee from letting someone else drive. Such permission may be implied, for instance, if the named insured has knowledge of the fact that the original permittee has permitted others to use the automobile in spite of that prohibition, and after acquiring that knowledge he makes no protest and takes no action to prevent him from continuing to do so. In such cases, however, the actions of the named insured must be of such a nature that his permission may be implied in spite of the fact that he specifically prohibited the use of the vehicle by a third person. In the instant case, however, the evidence shows that Dr. Wilson's actions were consistent with his instructions that no one other than his two sons were permitted to drive the Nash automobile, and we find nothing in the record which could justify a conclusion that he impliedly authorized his son to permit Lamonte, or anyone else, to drive the car. For that reason there is no basis in fact or in law for holding that Lamonte was using the car with the implied consent of Dr. Wilson.
Counsel for plaintiffs further argues that Lamonte was an insured under the omnibus clause because he was using the insured vehicle for the benefit of the first permittee. It is true that in some of the cases construing the omnibus clause there can be found statements which indicate that a third person using the insured vehicle with the permission of the first permittee will be considered as an insured if the vehicle was being used for the benefit of the named insured or of the first permittee. See Boudreaux v. Cagle Motors; Brooks v. Delta Fire and Casualty Company; Garland v. Audubon Insurance Company; and Donovan v. Standard Oil Company of Louisiana; all supra. In each of the above cases, however, it was found that the named insured had impliedly consented to allow the original permittee to let third persons use the loaned vehicle and, therefore, he had indirectly and impliedly permitted the use of the vehicle *296 by these third parties. We do not think any of those decisions were based solely on the fact that the insured vehicle was being used for the benefit of the named insured or the initial permittee.
The omnibus clause in the policy issued by defendant in this case unambiguously states that in order for a person to be an insured he must be using the vehicle with the permission of the named insured or his spouse. We think the "permission" referred to in that clause means the authority or consent granted to a particular person to use the vehicle, regardless of the mission or purpose for which it is being used. To hold that Lamonte was an insured simply because he was performing a mission for the first permittee would, in our opinion, be contrary to the rule announced in Parks v. Hall, supra. We think the test to be applied in determining coverage under the omnibus clause is whether the person using the vehicle is doing so with the express or implied permission of the named insured, and that it is immaterial as to whether the vehicle was being used for the benefit of the named insured, or of the first permittee, or was being used on a personal mission of the driver. There is no coverage under the policy if the vehicle is being used without the express or implied permission of the named insured, and in this case Lamonte did not have that permission.
We cannot agree with counsel for plaintiffs in his statement that Stephen was the "named insured for all intents and purposes." It is true that he was given the general use and control of the Nash automobile, but his right to use the car was subject to the specific restriction that he was not to permit anyone else to drive it. We do not think this constitutes Stephen as the "named insured," so that any third person whom he permits to use the car would be an insured under the omnibus clause.
Counsel for plaintiffs argues further that the wording, "actual use," contained in the omnibus clause relates only to the use of the automobile and not the identity of the person driving it. If we understand counsel's argument correctly, he contends that since Dr. Wilson had permitted his son to use the Nash automobile for his own purposes and pleasure, which included using it to go Lafayette and to transport his friend back to Alexandria, it follows that anyone using the vehicle on a mission for Dr. Wilson's son does so with the implied permission of the named insured, and accordingly the driver on such a mission would be covered under the omnibus clause. The case of Donovan v. Standard Oil Company of Louisiana, supra, is cited to support that argument.
In the Donovan case the named insured, Standard Oil Company, had given general discretion and continuous control of the insured truck to its foreman, Edmonds. The foreman permitted a person named Taylor, who was in charge of a nearby service station, to use the truck to deliver a tire. Taylor, in turn, permitted an employee of the service station to drive the truck, and an accident occurred while it was being driven by that employee. The record does not indicate whether Taylor was in the truck when the accident occurred. The Court of Appeal, Second Circuit, held that the driver of the truck at the time of the accident was an insured under the omnibus clause of the' policy, and in so holding the following language was used:
"It is certain that Edmonds and the oil company through him, knew the truck was to be used on a trip to deliver a tire and fix a flat. The `actual use' of the truck for the purposes named was with the `permission of the named insured.' This provision relates only to the use of the vehicle, not to the identity of the person actually driving it. The truck was, in fact, being used for the purpose for which borrowed. Such use being lawful, the ultimate legal situation is the same as if Edmonds had been driving it when the accident occurred. This clause was *297 incorporated in the contract out of an abundance of precaution to the end that liability under the coverage could not possibly be extended to cases of use not definitely by and with the consent of the named insured. * * *." [197 So. 324]
While the above quoted excerpt from the opinion in the Donovan case seems to support counsel's argument, we think the interpretation placed on that case by plaintiffs is inconsistent with the rule announced in Parks v. Hall, super. An interpretation of the Donovan case which seems to us to be more in line with the facts and the established jurisprudence is that Edmonds placed the truck at the disposal of the service station, rather than of Taylor individually, with the express or implied permission for it to be driven by any employee of that station who might be designated by Taylor, and accordingly that the employee of the service station was driving the truck with his permission at the time the accident occurred. Since Edmonds had been given general discretion and continuous control over the vehicle, it is implied that he had the authority to permit others to drive it, and since the employee who was driving the truck at the time of the accident was doing so with the permission of Edmonds, the original permittee, the driver was an insured under the omnibus clause.
In our opinion, the trial judge in this case correctly held that "there must be permission, either express or implied, granted by the named insured to the operator of the vehicle before the operator becomes an insured under the omnibus clause." In this case Lamonte did not have the permission, either express or implied, of Dr. Wilson, and accordingly he was not an insured under the policy.
For the reasons herein assigned, therefore, the judgment of the district court is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
TATE, Judge (dissenting).
I must respectfully disagree with my brethren of the majority. In my opinion, the defendant insurer is liable because the use of the insured vehicle was with the consent of the named insured at the time of the accident.
In this instance, the named insured had turned over to his sons the unrestricted use of the insured vehicle, a 1950 convertible. (At the time of the accident, the father had been away from home for several weeks. At all times the sons could use the vehicle as they wished.) Although technically title may still have been in the father, insofar as their friends were concerned, the car belonged to the boys.
At the time of the accident, the car was being driven at the request of the son, Stephen, and on a personal mission for him. The driver of the car had no interest in performing this errand whatsoever except to do so as an accomodation for Stephen, the original permittee of the named insured. Undoubtedly, the insurer would be liable under the omnibus clause if Stephen himself had been driving the vehicle at the time and place of the accident, instead of his friend at Stephen's request in order to pick up Stephen's girl friend (because Stephen had to attend summer classes that morning).
It is conceded, further, that coverage would have been afforded the driver of the automobile if, after the accident, the named insured had not then stated that Stephen, although given the unrestricted use of the car for all hours and at all places, was nevertheless not supposed to let any of his friends drive the car.
It is thus to be noted that the use of the car at the time and the place of the accident in no wise increased the risk for which the defendant insurer had agreed by its contract to afford protection.
Under these circumstances, I think that "the actual use of the automobile" was with the permission of the named insured, within *298 the meaning of the policy language. (See omnibus clause quoted in full in majority opinion.) The named insured's permission included the right to go to Lafayette or any other place or to use the car at any hour of the day or night. Reasonably implied within the scope of this permission must be temporary use of the automobile on errands for the original permittee. Can there, for instance, be much doubt that, under the circumstances, the father would readily have consented to the performance of this errand for his son by the son's friend, had the father been available for the request to do so in Alexandria instead of some thousand miles away in Maine, despite generalized instructions in the past to the boy not to permit his friends to drive? See also Boudreaux v. Cagle Motors, La.App., 1 Cir., 70 So.2d 741, 745: "* * * But the initial permission given by the named assured to an original permittee includes, according to the better view, the use of the automobile by a second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee. * * *"
Or, for instance, if the technical title of the car had been in the name of the sons, who actually had the exclusive use and control of the vehicle, then the driver would be clearly covered as the permittee of these owners of the insured car. The practical ownership of the vehicle was in the boys, and the driver was their permittee. The insurance policy covered operation of the sons' vehicle; its use by the driver at the time of the accident was within the uses of it by the sons contemplated at the time the insurance policy was issued, as well as by the father at the time he turned over unrestricted control of the automobile to his sons. I do not think that the insurance coverage of the operation of the sons' vehicle should be denied because the father retained technical title to the vehicle, which for all practical purposes was owned by his sons, who were for all intents the actual named insureds. See Garland v. Audubon Ins. Co., La.App. 1 Cir., 119 So.2d 530.
The evidence shows that the father had driven the car home a year before the accident and had never driven it since, its exclusive use thereafter being by the boys. The evidence further shows that on several other occasions the son Stephen had permitted the car to be driven by Lamonte, driver of the car at the time of the present accident.
Regarding this question from the point of view of Lamonte, surely he was reasonably entitled under the circumstances outlined to feel that his use of the car was with the permission of Stephen's father and was thus protected by the liability insurance policy purchased to protect the driver-with-consent, at well as the public, against liability arising from the negligent use of the automobile. In the event of ambiguity, the interpretation of the policy should be most favorable to the insured, which in the policy language includes "any person" using the insured vehicle, provided its "actual use" is with the permission of the named insured. To my mind, construing this language most favorably to the omnibus insured, this implies that coverage is afforded if the "use" is within the scope of the permission of the named insuredwhich would at least include its use at a time and place within the contemplation of the original permission, when such use is for the benefit and at the direction of the original permitteewhether or not the named insured had expressly consented to the identity of the driver, so long as the latter at any rate is using the car within the scope of the original permission.
Before discussing the jurisprudence, I think I should briefly advert to another possible ground for the insured's liability herein. It should, of course, be admitted that the insurer is liable for any negligence of Stephen, as an original permittee, arising out of the use of the automobile. Since the use of the car by the driver at the time of the accident was at the direction of and for the benefit of this original permittee, it is entirely possible that Stephen himself *299 would be liable in tort[1] as an instigator or a participant, for acts performed at his direction and for his benefit. See Monroe v. Heard, La.App. 1 Cir., 168 So. 519, LSA-C.C. Art. 2324; Note, "Liability of Automobile Owner for Driver's Negligence", 12 La.L.Rev. 323 (1952). Cf. Harrison v. Carroll, C.C.A.4, 139 F.2d 427 (1943). But see Annotation, 103 A.L.R. 487, and 27 Am.Jur. "Infants" Section 90, to the effect that a minor is generally not liable under respondeat superior for a tort committed by his agent or servant.
My brothers of the majority hold that, since neither the named insured, Dr. Wilson, nor his wife, had given Lamonte permission to drive the insured car at the time of the accident, then Lamonte was not under the policy definition a named insured, because he was given permission to drive the car by Dr. Wilson's son instead of by the named insured himself. The majority felt constrained to so hold because of the recent decision of our Supreme Court in Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734.
In the cited case, a 15-year-old boy was held not to have been constituted an omnibus insured when the son of the owner had left with him some keys in the event it became necessary to move the insured vehicle. The accident resulted when the boy took the keys and drove into town. The Supreme Court held that the son of the owner, an "insured" under the policy (as a member of the household of the named insured) could not, in the capacity of an "insured", give permission to a stranger to drive the vehicle so as to constitute the latter an authorized "permittee", since the policy provided that use only with the consent of "named insured" constituted another an omnibus insured. 127 So.2d 737. Therefore, since "initial permission was lacking in the instant case, * * * no useful purpose would be served in attempting to explain what the courts may have said under a widely differing factual situations * *", 127 So.2d 738, referring to various courts of appeal decisions holding that the original permittee given the use of the automobile could constitute yet a third person an omnibus insured.
See, e.g., Garland v. Audubon Insurance Co., La.App. 1 Cir., 119 So.2d 530; Brooks v. Delta Fidelity & Caulalty Co., La.App. 1 Cir., 82 So.2d 55; Donovan v. Standard Oil Co., La.App. 2 Cir., 197 So. 320.
As Justice Sanders in his concurring opinion in the Rogillio case summarized the inital permission doctrine of Louisiana, "Concisely stated, this doctrine is that initial permission, express or implied, is sufficient to constitute the operator of a vehicle an insured under the omnibus clause. It is predicated upon a rationale that the owner of a vehicle should reasonably anticipate and foresee deviations and that by placing the vehicle in the control of the permittee he impliedly consents to its extended use. * * * Generally, the delegation of the use or operation does not defeat coverage. The use of the vehicle by the second operator is treated the same as other deviations. The consent of the named insured is implied. * * *" 127 So.2d 739.
Now I am frank to state that the language of the Supreme Court's decision in the Rogillio decision is susceptible of the broad interpretation reluctantly given it by our learned trial brother. But this decision's holding and language must be interpreted in the light of its own particular facts. The chief contention there before the Court was that the omnibus clause "applies to anyone who has been given legal control of the car." 127 So.2d 737. The Supreme Court then succinctly stated: "With this we cannot agree".
Posed for the Supreme Court's consideration, then, was the proposition that the omnibus clause applied simply upon a showing *300 that the driver had legal control of the car based upon permission from someone other than the named insured, whether or not under all the circumstances the named insured's permission did or did not imply within its scope the named insured's permission to the initial permittee to permit yet others to use the vehicle in question.
The Supreme Court only held, in my opinion, that, in addition to legal control of the vehicle, a showing must be made that the use of the vehicle was with the express or implied permission of the named insured at the time of the accident. I do not believe that our highest court intended to limit or overrule earlier jurisprudence holding that the use of the insured vehicle may be with the permission of the named insured when the circumstances imply that the named insured's turning over the vehicle to the initial permittee foreseeably and reasonably included, within the initial permittee's use of the automobile, the latter's power to permit yet others to drive the insured vehicle for him with the thusimplied permission of the named insured.
Thus, in the Rogillio opinion the Supreme Court cited with approval Brooks v. Delta Fire & Casualty Co., La.App. 1 Cir., 82 So.2d 55, noting that there the driver of the car was acting on behalf of the initial permittee under circumstances where the named insured should reasonably have foreseen that the initial permittee might require or permit others to drive the insured car. (It is noteworthy that in the Brooks case the named insured likewise stated, after the accident, that the initial permittee had been instructed by the named insured not to let anyone else drive the insured car.)
A factor affording ground to hold that the named insured did indeed delegate a general authority to the original permittee to permit others to drive the car with the named insured's consent, is when the named insurer turns over the continued and unrestricted use of the insured automobile to the original permittee, with the consequent reasonably clear implication that the general permission given the original permittee includes the right to permit others to temporarily drive the insured vehicle for him, especially on missions within the reasonable contemplation of the original permission. See Garland and Boudreaux cases, above-cited.
Under such circumstances, this implied delegation to the original permittee of the named insured's power to permit others to drive the insured vehicle should not, after an accident occurs while such vehicle is being driven by the original permittee's permittee, be shown to have been limited by a general theoretical instruction in the past, often-disregarded, that the original permittee should not let others drive the insured vehicle given into his control for his unrestricted use.
In Domingues v. American Casualty Co., 217 La. 487, 46 So.2d 744, and Waits v. Indemnity Ins. Co. of North America, 215 La. 349, 40 So.2d 746, our Supreme Court held that coverage was afforded by the omnibus clause when employees, entrusted with the work-time use of the insured vehicles, went back after work to the designated parking place and took possession of the vehicles for their own personal use, in express violation of the employers' specific instructions. The identical logical and well-reasoned arguments adopted by the majority of this court in the present case were rejected by the Supreme Court in the cited decisions; for, despite the words prohibiting certain uses, the louder-speaking action in turning over unrestricted control of the vehicles at all times foreseeably included "some discretion", 46 So.2d 748, on the part of the original permittees deviating from specific contrary instructions.
When the present insured turned over unfettered and unsupervised control of the insured vehicle to his teen-age sons, he should reasonably and humanly have realized that the use of the vehicle permitted by him included at least the occasional driving of the vehicle by his sons' friends on errands for them. Assuming the perfect good faith of the present insured in testifying *301 so stoutly that he had repeatedly told his sons not to let others drive the car and that he did not know that they had in fact permitted friends to do so on occasion, nevertheless the insurance protection of the public and of those driving the car with the permission of the original permittee should not be determined after an accident by the named insured's sometimes discretionary recollections of private verbal instructions given before the accident, when the entire surrounding public course of conduct in fact indicates that the permission included within its scope the occasional use of the vehicle by others and that the verbal instructions were actually only unenforced and often ignored admonitions of an advisory nature.
As stated in the leading case of Parks v. Hall, 189 La. 849, 181 So. 191, 194, "The words used in the [omnibus] clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car." Or, as stated by Chief Justice Fournet in his concurring opinion in Domingues v. American Casualty Co., above-cited, at 46 So.2d 751, "The language in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; and * * * where the language used in the policy is ambiguous, admitting of two constructions, it must be construed in favor of the insured and against the insurer so that the interest of the insured, who has paid a consideration for the indemnity, may be protected * * * [T]he omnibus clause was included in their contract for the very purpose of covering the liability of the operator of the car as the unnamed assured, and so that any injured person would be given a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car * * *."
For the foregoing reasons, I respectfully dissent from the well-written and scholarly opinion of my esteemed brethren of the majority.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, Judge (dissenting from refusal to grant a rehearing).
Since rendition of our opinion herein, the decision of our brothers of the Second Circuit in Hurdle v. State Farm Mut. Auto. Ins. Co., 135 So.2d 63, has been published. This decision concerns a defense by an insurer, in a situation analogous to the present, that the insured's alleged verbal restrictions on the use of his car prevented application of the omnibus clause, when he had consented to a general use of the insured vehicle by the original permittee.
The second permittee's use of the automobile was there held to be covered by the omnibus clause in the policy issued by the defendant insurer. In arriving at this result, the Second Circuit relied upon well established principles concerning omnibus clause coverage to the effect, for instance, that "`If an insured automobile is left by the owner with someone for general use and he in turn permits its use by another, the use is deemed to be with the permission of the owner", 135 So.2d 66, and that "It is also a general rule that permission will be implied when the use of the vehicle inures to the benefit of the named assured and the original permittee", 135 So.2d 66.
As our brethren of the Second Circuit show, the Supreme Court decision in Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734, was not intended to change such wellestablished jurisprudence, which is in accord with the principles established by Parks v. Hall, 189 La. 849, 181 So. 191. The holding in Rogillio is limited to its particular facts, which are that at no time did the second permittee receive either from the named insured or from the original permittee, by implication or with any implied authority from the named insured, *302 any permission to drive the automobile. As the Second Circuit stated with specific reference to the Rogillio decision, 135 So.2d 67, "The Supreme Court, therefore, has not changed our jurisprudence with respect to the extent and effect of implied permission from the named insured as reflected in the authorities discussed above."
For these reasons as well as those set forth in my original dissenting opinion, I respectfully dissent from the refusal to grant a rehearing herein.
NOTES
[1] Although the parent may be statutorily liable for the tort of his minor child under LSA-C.C. Art. 2318, the minor himself is also individually liable for his torts and those obligations arising out of offenses or quasi offenses. LSA-C.C. Art. 1785, Smith v. Freeman, La.App., 2 Cir., 31 So.2d 524.