121 So.2d 593 (1960)
Mrs. Ruby THOMAS et al., Plaintiffs-Appellees,
v.
PEERLESS INSURANCE COMPANY, Defendant-Appellant.
No. 9224.
Court of Appeal of Louisiana, Second Circuit.
May 23, 1960.
Rehearing Denied June 22, 1960.
*594 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
Dhu & Lea S. Thompson, Monroe, for appellees.
GLADNEY, Judge.
Plaintiffs brought this action against Peerless Insurance Company to recover for personal injuries received by Mrs. Thomas and resulting pecuniary losses sustained by her husband, including property damage to his automobile. Following a trial, judgment was rendered in favor of the plaintiffs and the defendant insurer has appealed.
Pertinent facts which brought about this collision are not disputed. Counsel for appellant addresses his argument principally to the question of whether the possession of a Ford automobile owned by the insured, Metz Tugwell, which vehicle was involved in a collision with the Thomas car, was obtained by its driver, Jimmie H. Berry, by means of misrepresentation and as a consequence its possession and use were without the permission of the named insured and not covered by the omnibus clause of the insurance policy. The liability policy shows it was intended to cover the operations of a used car dealer, including the use of vehicles owned by him. The provision in the policy under which the defense is made, defines "Insured", and reads:
"With respect to the insurance under coverage A, B & D, the unqualified word, `Insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting in the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured *595 covered by this policy and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"
On the morning of January 15, 1959, at which time a light rain was falling, Ruby Thomas was driving her husband's Chevrolet automobile in a northerly direction on Louisiana Highway No. 489 in Union Parish when it was involved in a head-on collision with the car being operated by Jimmie H. Berry. It is conclusively shown the collision occurred in the lane of travel properly occupied by Mrs. Ruby Thomas and was caused by Berry losing control of the Ford automobile. As a result of the negligence of Berry, Mrs. Thomas sustained serious personal injuries and her husband incurred medical expenses and property damage to his automobile. As previously pointed out, no objection is made to the charges of negligence.
Metz R. Tugwell, the owner of the offending automobile and the named insured of the defendant, on the date of the accident and prior thereto, operated an automobile sales lot in Farmerville, Louisiana, which during his absence, was under the general management of his salesman-employee, Billy Joe Adcock. The testimony of Tugwell and Adcock indicates Tugwell had a standing instruction that no car was to be taken from the lot unless its operator was accompanied by Adcock. On the morning of January 15, 1959, after Tugwell had left for Shreveport on business, Jimmie H. Berry drove up to the sales lot in a Ford station wagon which he parked near the sales lot. He approached Adcock and requested permission to try out a certain 1957 Ford automobile which he observed on the lot and which he apparently had in mind to purchase. After some conversation with Adcock, Berry entered the 1957 Ford car and drove off alone. It was while on this trip the collision with the Thomas automobile took place. Following the accident Berry was arrested and later it was discovered he had a police record. Shortly afterwards he disappeared and has not since been heard from.
Pertinent to the charges that possession of the automobile was obtained through misrepresentation and fraud, are the following quotations from the testimony of Adcock:
"Q. * * * Now, what was the occasion for Mr. Berry being over there? A. Well, he came up on the yard and told me that Mr. Tugwell said to let him have that '57 Ford sitting out there, that he had talked to him the night before and he had made a deal with him on it.

* * * * * *
"Q. What kind of automobile was he riding in? A. He was riding in a '57 Ford station wagon.

* * * * * *
"A. Well, I asked him when did he talk to him and he said the night before, and so,I mean, him driving a Ford wagon, I figured he was an old customer of Mr. Tugwell's and I gave him the key and let him have the car."
Tugwell testified he did have a brief conversation with Berry in a drugstore several nights prior to the date of the accident, but denied he had "made a deal" with reference to the 1957 Ford, or that he had sent word to Adcock to let Berry have the car. Undoubtedly, we think, Berry did misrepresent his conversation with Tugwell.
Adcock testified that he had on a number of occasions let unaccompanied prospects drive automobiles from the lot to try them out before trading, and when he was in charge of the lot he followed the same practice of Mr. Tugwell in permitting vehicles to leave the lot. This manner in which Tugwell conducted his business was confirmed by Raymon Cranford, who had previously been employed by Tugwell in *596 the same capacity as Adcock for a period of about two years. The standing instruction was repeatedly departed from as exceptions were made for Mr. Tugwell's special customers or when Adcock was busy on the lot with his own customers.
The evidence is insufficient to show Adcock was moved to grant the permission given Berry solely because of the latter's false statements, but rather, we believe, Adcock was following a practice which was inconsistent with Tugwell's instruction. Adcock, undoubtedly, felt secure from risk for Berry had left his own automobile parked nearby and would return after trying out the 1957 Ford. This seems to have been the only purpose of Berry in using the car, and as pointed out by the trial court, except for the accident Berry might eventually have purchased the automobile. Accordingly, we find the misrepresentations of Berry were immaterial for we believe Adcock in granting permission was principally motivated by the possibility of selling Berry the automobile and because the latter had left behind his own station wagon.
The departure of Adcock from his general instructions serves to distinguish this case from Clemons, et al. v. Metropolitan Casualty Insurance Company et al., La. App.1944, 18 So.2d 228, and Longwell v. Massachusetts Bonding & Insurance Company et al., La.App.1953, 63 So.2d 440, wherein the limitation upon the authority of the first permittee was plainly defined and there was no deviation from instructions. The instant case falls within the "initial permission rule", stated in Parks v. Hall et al., 1938, 189 La. 849, 181 So. 191, which has been consistently followed by the Supreme Court. See: Stanley et al. v. Cryer Drilling Company et al., 1948, 213 La. 980, 36 So.2d 9; Waits v. Indemnity Insurance Company of North America, 1949, 215 La. 349, 40 So.2d 746; and Dominguez v. American Casualty Company et al., 1950, 217 La. 487, 46 So.2d 744. The rational in Parks v. Hall is thus set forth [189 La. 849, 181 So. 194]:
"Under the facts of this case, Hall was operating the car with the permission of the assured and the policy, by its express terms, i. e., the omnibus clause, was made to cover, as an assured, any one who was driving the car with the permission of the owner of the insured car. The provisions of the policy do not limit the liability thereunder to causes arising when the permitted driver was using the car either for the owner's business or under any restricted circumstances. The langauge is not restricted, but used in its broadest possible sense and under the rules of construction generally applicable in cases of this kind, we must give the language used the same broad construction. The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, at the time and under the circumstances of the accident, the driver was proceeding within the limitations of the permission of the assured to use the car. In order to give the clause `provided: (a) it is being used with the permission of the named assured,' the construction placed by the Court of Appeal and contended for by the defendants, we would have to give it a restricted and limited meaning, contrary to the rules of construction of such contracts. We would have to resolve the doubt or uncertainty or ambiguity in favor of the writer of the insurance contract."
The facts developed herein bring the instant case more nearly in line with the holding in Boudreaux et al. v. Cagle Motors et al., La.App.1954, 70 So.2d 741, 745. Therein Anthony Monticello left his Chrysler car at Cagle Motors to be repaired and was loaned an automobile as a substitute. The delivery of the loaned vehicle was apparently a routine matter with nothing having been said as to who would drive it. The car was involved in an accident while *597 being driven by the son of Anthony Monticello, with the latter's consent. The defendant insurer claimed there was no liability upon it because at the time of the accident young Monticello was not operating the borrowed automobile with the consent of the named insured, Cagle Motors. The court held there was a delegation of authority to the second permittee by implication, holding:
"We are of the opinion that the original permittee in this case had more or less general discretion and continuous control over the substituted or replaced car so that he could validly grant permission to his son to use the same, particularly since said use was for the benefit of the named assured and the original permittee. The Louisiana cases on this point are summarized at 5 A.L.R.2d pp. 647, 648. See also American Jurisprudence, Volume 5, Automobiles, par. 535.1 (New Text)By Permittee of Named Insured.
"`* * * But the initial permission given by the named assured to an original permittee includes, according to the better view, the use of the automobile by a second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee. * * *'"
The loan of the 1957 Ford by Adcock to Berry was made in furtherance of the business of the named insured, Tugwell, and was within the concept of coverage of the insurance policy. As noted in the Parks v. Hall case, supra, the omnibus clause was made to cover as an additional assured anyone who was driving the car with the permission of the insured, and the word "permission" should not be construed in its restricted but in its broadest possible sense. Forasmuch as Adcock was given broad general authority to exercise his discretion as to the use of cars on the sales lot, especially in the absence of Metz Tugwell, we are fully justified in assuming he had such authority. Deboue v. Gillman et al., La.App.1941, 2 So.2d 690. His action in permitting Berry to try out the 1957 Ford car was not only in line with general business practice, but followed customary procedure. The instruction given by Tugwell to Adcock to accompany drivers undoubtedly was exercised only in certain cases and was departed from frequently. We hold Berry was operating the automobile involved in the accident with the permission of the named insured and accordingly, the insurer is liable for the damages incurred by plaintiffs under the omnibus clause of its policy.
Appellant also urges the damages awarded are excessive and should be reduced. The trial court rendered judgment in favor of Jesse Thomas, the husband, for $824.52 covering special damages incurred, and an award was made in favor of Mrs. Ruby Thomas for $4,175.48, the two items requiring the payment of the full limit of the policy. It is our appreciation of appellant's position the award for special damages is not questioned and contention is confined to the award in favor of Mrs. Thomas for personal injuries. Mrs. Thomas, a comparatively young woman, according to her attending physician, Dr. George Wright, suffered a mild concussion, multiple contusions, a whiplash type of injury to the cervical spine and a lumbosacral strain. She was still undergoing treatment when the case was tried. The injuries did not promptly respond to treatment, but persisted and pain from the lumbosacral sprain was increased by reason of the obese condition of the patient. Dr. Roy H. Ledbetter, an orthopedist who was treating the neck and back conditions, stated that as of November 4, 1959, his prognosis was still indefinite, but with rest, inactivity and appropriate medication there would be improvement although he was of the opinion recurrent back soreness would likely be permanent. The medical evidence tendered on behalf of the appellee was not seriously controverted. It is our opinion the award as made by the *598 judge a quo in favor of Mrs. Thomas is not excessive.
For the reasons herein stated, the judgment will be affirmed at appellant's cost.