CHEHARDY, Judge.
By appeals in these consolidated cases, defendants Andrew Roth and American Fidelity Insurance Company (American) challenge a trial court judgment, based on a jury verdict, in favor of the plaintiffs in the following amounts: Carolyn E. DiLeo, $6,583.33; Larry Nelson, $1,291.66; Debbie Deal, $2,000.00; and Jimmy Deal, $2,541.66, together with legal interest from the date of judicial demand until paid, and all costs.
Plaintiff Larry Nelson has also appealed the judgment, questioning quantum.
Of the above sums, American was ordered, as primary insurer, to pay $12,405.95 and Interstate Fire and Casualty Company, an umbrella insurer, was to pay $10.70.
Judgment was also decreed in favor of plaintiff State Farm Mutual Automobile Insurance Company (State Farm) and against defendants Roth and American, in solido, in the sum of $3,060.42 together with legal interest from the date of judicial demand until paid. (This includes property damages and medical expenses paid to Di-Leo in the amount of $2,750.42 and medical expenses alone paid to Jimmy and Debbie Deal in the sum of $310.00.) To the extent that these sums were paid to State Farm, defendants Roth and American were allowed a credit against the judgments in favor of DiLeo and Mr. and Mrs. Deal.
There was also judgment in favor of defendants Henry J. White, Jr., and Liberty Mutual Insurance Company (Liberty), dismissing plaintiff State Farm’s suit as to those defendants. Judgment was also granted to White and Liberty and against the plaintiffs DiLeo, Jimmy Deal, Debbie Deal and Nelson dismissing their suits as to these defendants.
*1376 The trial court decision also dismissed the suits of Nelson, Jimmy Deal and Debbie Deal against DiLeo and awarded fees to the expert medical witnesses testifying at trial.
Although Nelson contends the trier of fact, in this ease a jury, abused its discretion in the quantum of damages awarded, we cannot, after careful study of the record, agree with that contention. Nelson’s physical injuries, pain and suffering were considerably less than those suffered by the other plaintiffs, and the record does not show that manifest error which would justify this court’s interference with the jury’s award to Nelson.
Appellants Roth and American do not question the trial court’s finding of negligence on the part of Roth, nor do they contest the awards of damages rendered, but aver those damages should be cast against defendant Liberty under the provisions of the omnibus clause of its policy of insurance issued to White, the named insured of the vehicle driven by Roth at the time of the accident. They further contend that Roth was driving the car with the expressed and/or implied permission of the named insured, Henry J. White, Jr., and/or his son, Terry White, thus casting Liberty primarily liable for the judgment so rendered.
The policy issued to Henry J. White, Jr., by Liberty stated in part:
“Under the Liability and Medical Expense Coverages, the following are insureds:
(a) with respect to an owned automobile,
(1) the named insured,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * *
The verdict which the jury returned to the court recited the following finding of fact:
“ ‘WE’ the jury find a verdict in favor of the plaintiffs and against the defendants Andrew Roth and American Fire Insurance Company and Interstate Fire & Casualty Co., in solido, we find that Roth did not have the permission of Henry White, Jr. to use the auto Roth drove and therefore Roth’s own insurance company is his insurer in this accident. * * *”
We agree. Terry White testified that on the day of the accident he had switched cars with Roth, lending him the White family’s Nova because Roth, a close friend, had a date that night and the radio in his own car was not working. Young White also said that neither his mother nor his father knew about Roth’s using the car that night; that he was aware he was disobeying his parents by lending Roth the vehicle and that his parents on numerous occasions had told him and the other children in the family they could not lend out the cars without specific permission from their parents.
Both Terry White and Roth also testified that Mr. White had given Roth permission to use the Nova only on certain specific prior occasions when he had asked Roth to run errands for him.
It was also established at the trial that although the Nova was the family car primarily used by Terry White, this car was also used by the other White children and young White did not have exclusive dominion over the car.
Mrs. White also testified the family rule was that people outside the White family were not to use the cars and that her children had been informed of this rule in Roth’s presence.
Roth, himself, stated at trial that although he had Terry White’s permission to use the Nova on the evening of the accident, he was also aware it was in direct disobedience of Mr. White and that if he had asked Mr. White’s permission he was sure he would have said “no.” He also stated that on at least one occasion he had been present when Mr. White reprimanded young White about lending the car to others, and he said Mr. White had never refused permission for Roth to use the ear, but only because Roth had never asked.
*1377 In the case of Peterson v. Armstrong, 176 So.2d 453 (La.App. 3d Cir. 1965), cited by the defendants, the court addressed the specific issue involved in this appeal at page 457 and stated:
“In Coco v. State Farm Mut. Auto. Ins. Co., La.App. 3 Cir., 136 So.2d 288, this court had occasion to make an exhaustive analysis of the jurisprudence concerning the question before us. As there stated, ‘ * * * the jurisprudence of this State has been established to the effect that where the original permittee has been granted more or less general discretion and continuous control over the insured vehicle by the named insured, such general permission carries with it the implied consent of the named insured for the original permittee to allow third persons to use the insured vehicle.’ 136 So.2d 293. Citations omitted.
“The opinion further states, 136 So.2d 293: ‘In a case, however, where the original permittee has been granted the more or less general use of and continuous control over the insured vehicle by the named insured, but with the specific restriction or prohibition that he is not to permit anyone else to drive it, then we think the general permission granted to the original permittee does not carry with it the implied consent of the named insured that others may be permitted to drive the insured car.’ Nevertheless, as the opinion continued, 136 So.2d 295: ‘We can readily conceive of circumstances where the permission of the named insured for a second permittee to use the automobile may be implied, even though the named insured has specifically prohibited the initial permittee from letting someone else drive. Such permission may be implied, for instance, if the named insured has knowledge of the fact that the original permittee has permitted others to use the automobile in spite of that prohibition, and after acquiring that knowledge he makes no protest and takes no action to prevent him from continuing to do so.’ (Italics ours.) See also Thomas v. Peerless Insurance Co., La.App. 2 Cir., 121 So.2d 593; Comment, cited above, at 22 La.L.Rev. 535.”
Although in Peterson v. Armstrong, supra, the appellate court found no error in the trial court’s conclusion that the defendant’s father had not forbidden his son to let others use the family car while entrusted to the son’s general use and continuous control, this finding was supported by the evidence, as noted at page 456:
“ * * * In sworn interrogation soon after the accident, admitted in evidence at the trial, the father had in his own words described his instructions to Kent as follows: ‘ * * * so far as being able to lay down a standard set of rules for him — -I don’t see how you can do it. He knows— he knew that the best thing he could do to take care of the car was to drive it himself, but so far as to come right out and tell him that he can’t let anybody else use it — it’s almost impossible, to me it is. * * * [Circumstances might come up that somebody else might want to use it, you say “Well, I don’t see anything wrong with it, go ahead.” But he had been told the best thing to do is not to do it.’ Exhibit J-l, Tr. 90. What the father intended by his admonition to Kent not to lend the car to others was, he stated at one point in his trial testimony, ‘that he [Kent] should not loan the car, not for their pleasure’ (Tr. 540); at another, ‘except in the case where there was some emergency come up, that he should not permit anyone else to drive it but should drive it himself’ (Tr. 542).
“The father frankly admitted, however, as to the situations in which Kent was intended to have permission to let others drive the car, ‘that would have to be his [Kent’s] decision to make, I would not be there; his mother would not be there; he would have the car away from home, and that would be his decision that he would have to make.’ Tr. 543. Thus, as both Kent and his father testified, his parents’ permission for Kent to keep the car under his continuous and general control at school for a week or so at a time, contemplated that Kent could let others drive the car in exceptional situations as deter *1378 mined solely by his own good judgment and intelligence. Tr. 542, 553.”
As established by the uncontroverted testimony of Mr. and Mrs. White, Terry White and Roth, such was not the situation in the present case; therefore, this court finds Peterson v. Armstrong, supra, distinguishable on the facts.
We also find the cases of Thomas v. Peerless Insurance Company, 121 So.2d 593 (La.App. 2d Cir. 1960), and Garland v. Audubon Insurance Company, 119 So.2d 530 (La.App. 1st Cir. 1960), equally distinguishable because in both cases the original permittee of the insured had a broad, general authority to exercise discretion as to the use of the automobiles, and, therefore, the actual use of the automobiles on the occasions of the accidents was within the initial permission of the named insured. Counsel for Roth and American also complain that the trial judge failed to use certain of appellants’ suggested jury charges. We do not agree. The court’s charges, in our opinion, were proper and covered all points of concern necessary to the jury’s determination of whether or not implied consent for Roth to operate the Nova could be imputed to Henry J. White, Jr.
For the reasons above, the district court judgment is affirmed.

AFFIRMED.