549 So.2d 367 (1989)
Luvell KING, et al., Plaintiffs-Appellants,
v.
LOUISIANA FARM BUREAU INSURANCE COMPANY, Defendant-Appellee.
Bernard HOBBS, Plaintiff-Appellant,
v.
LOUISIANA FARM BUREAU INSURANCE COMPANY and Jerry Foster, Defendants-Appellees.
Nos. 20703-CA, 20704-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Rehearing Denied September 21, 1989.
Writ Denied November 27, 1989.
*368 Travis M. Holley, Bastrep, for plaintiffs-appellants
John M. Hoychick, Jr., Rayville, for defendants-appellees.
Before HALL, MARVIN and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs in this case are Luvell King, Wilbert Baker, Delcie Jones and Bernard Hobbs. Plaintiffs appeal a trial court ruling finding that the defendant, Jerry Foster, was operating a vehicle without the permission of the owner and therefore was not covered by the owner's insurance policy issued by Louisiana Farm Bureau Insurance Company. For the following reasons, we reverse the trial court judgment.

FACTS
This case arose from a motor vehicle accident which occurred during the early morning hours of November 7, 1986. Jerry Foster was driving a 1977 Chevrolet pickup truck owned by his employer, John Allen Crymes. He was accompanied by Bernard Hobbs, one of the plaintiffs. Two ladies were also guest passengers. Foster and Hobbs had spent part of the evening at a bar and later picked up the two ladies at their homes. The group was en route to a truck stop when the accident occurred. Jerry Foster made a left turn into the path of an oncoming vehicle occupied by the other plaintiffs, Luvell King, who was the driver, and Wilbert Baker and Delcie Jones, his passengers.
King, Baker and Jones were injured. Bernard Hobbs was also injured. King, Baker and Jones filed suit against Jerry Foster and against John Allen Crymes' insurer, Louisiana Farm Bureau Insurance Company. Hobbs filed a separate suit against Foster and Louisiana Farm Bureau Insurance Company. The two suits were consolidated for trial. The trial was bifurcated and was limited to the issue of whether Jerry Foster was an insured under the policy issued on the vehicle by Louisiana Farm Bureau Insurance Company.
The pickup truck involved in the accident, although owned by Crymes, had been entrusted by Crymes to James Foster, the defendant's brother, for use in Crymes' farming operation. Both Crymes and his father, John Crymes, instructed James Foster that the truck was to be used on the farm and could be used for personal errands in the community. However, James Foster was instructed not to take the truck on long trips without first seeking permission. James Foster was also instructed not to let others use the truck and specifically not to let his brother, Jerry, use the vehicle. Jerry Foster had several DWI convictions and had wrecked several of his own vehicles.
James Foster kept the vehicle at his home and had general use and control of the vehicle. When the vehicle was parked at Foster's home, the keys were usually left in the ignition. The vehicle was generally used on the farm by James and the other farm workers. It was also occasionally used by both James and the farm workers, to go to town on personal errands, according to Mr. Crymes' testimony, in spite of his restriction against James allowing others use of the vehicle. Mr. Crymes was aware that the vehicle was in general usage around the farm and community. Mr. John Allen Crymes testified that he had specifically instructed James Foster not to let Jerry drive the truck. However, Mr. Crymes did testify that he had seen Jerry use the vehicle in the fields and on the farm, notwithstanding his previous instructions. He stated that he had not seen Jerry drive on the public highway. He stated that if he had seen Jerry Foster driving the truck on the highway he would have stopped him from doing so.
James Foster testified he understood that Jerry was not to drive the truck, although he stated the he was aware that Jerry sometimes drove the truck on the farm.
*369 On the afternoon of November 6, 1986, Jerry Foster went to his brother's house and obtained the truck. Jerry testified that James gave him permission to take the truck. At trial, James denied giving express permission.
After getting the truck, Jerry attended to personal errands in the afternoon. That evening, while operating the vehicle on a personal outing, the accident occurred.
Louisiana Farm Bureau denied liability, claiming that Jerry Foster was not covered under the omnibus clause of the policy because he did not have the permission of the named insured, John Allen Crymes, to use the vehicle.
The plaintiffs sought to prove that Crymes was aware of Jerry Foster's operation of the truck and that Crymes had observed Jerry Foster driving the truck. Therefore, plaintiff contended that Jerry Foster had the implied permission of Crymes to operate the vehicle at the time the accident occurred and that coverage existed.
The plaintiffs also sought to show that James Foster was authorized to grant permission to Jerry to drive the truck and had done so on numerous occasions.
The trial court found that the plaintiffs failed to carry their burden of proving that Jerry Foster had the express or implied permission of John Allen Crymes to operate the vehicle and therefore, Jerry Foster was not covered by the insurance policy issued by Louisiana Farm Bureau Insurance Company.
The plaintiffs appealed, arguing that coverage existed because Crymes admitted he knew Jerry Foster drove the truck on the farm and that under Moore v. Travelers Indemnity Insurance Company, 284 So.2d 165 (La.App. 3rd Cir.1973), writ denied, 286 So.2d 365 (La.1973), where a person had permission to drive a vehicle on private grounds, that person was covered by the omnibus insured clause when he deviated and drove the vehicle on a public highway.
The plaintiffs also cite Taylor v. Liberty Mutual Insurance Company, 191 So.2d 786 (La.App.2d Cir.1966) for the proposition that when the named insured gives an original permittee general discretion and continuous control over the insured vehicle and where the named insured has acquiesced in the original permittee allowing others to use the vehicle, the second permittee is also covered by the policy of insurance.
Under the facts of this case, we find that the arguments raised by the plaintiffs have merit.

DISCUSSION
The insurance policy issued to John Allen Crymes by Louisiana Farm Bureau Casualty Insurance Company covering the truck involved in this accident provides a definition of an "insured":
The unqualified word "Insured" includes the named insured and also includes...:
(b) Any other person while using an owned automobile with the permission of the named insured, providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission....
The issue of when "permission" has been granted for operation of a vehicle belonging to a named insured has been the subject of much litigation in this state.[1] In addressing this question, the courts began an examination of "permission" with cases in which the named insured gave a permittee permission to use a vehicle for a specific purpose, but the permittee deviated from that purpose.
In Parks v. Hall, 189 La. 849, 181 So. 191 (1938), the Louisiana Supreme Court found that as long as permission existed initially, deviation from the permitted purpose would not defeat coverage. In Parks v. *370 Hall, supra, an omnibus clause in the insurance policy specified that coverage would extend to persons other than the named insured when operating the vehicle with the permission of the named insured. The court found that the permission granted by the named insured to the permittee, where the permittee was allowed to use the vehicle in the first instance, irrespective of the use to which he put the vehicle while in his possession, was permission of the named insured within the meaning and contemplation of the omnibus clause and the permittee was covered by the insurance policy.
This rule was followed in all deviation cases and was expanded to include cases in which the first permittee allowed a second permittee to use the vehicle of the named insured. The change in drivers was construed simply as another form of deviation by the original permittee. Rogillio v. Cazedessus, (concurring opinion, Sanders, J.), 241 La. 186, 127 So.2d 734 (1961).
However, in Rogillio v. Cazedessus, supra, the court recognized a distinction between a deviation from route or purpose by an original permittee and a change in drivers of a vehicle. In that case, the court noted that under Parks v. Hall, supra, and its progeny, a jurisprudential rule had developed which provided that the original permission of the named insured extended to anyone who had legal control of the vehicle. The court renounced this rule and stated that courts should look to whether the named insured could have reasonably foreseen that the original permittee would grant permission to another party to use the vehicle.
In American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969), the court cited Rogillio, in denying coverage to a second permittee who was involved in an accident while operating a vehicle without the knowledge or permission of the named insured. The court stated that the issue of coverage was to be determined by an evaluation of foreseeability. The court stated that there is an important distinction between deviation cases and cases involving a change of drivers.
The court noted that a change in route is more foreseeable than a deviation in drivers. The court also noted that people are more particular about who is allowed to drive a vehicle than the route that is taken.
The court also pointed out that older cases such as Parks v. Halls, supra, dealing with deviations, are distinguishable from cases involving second permittees.
Following these two cases, the jurisprudential rule developed that in cases involving second permittees, when no restrictions have been imposed upon the first permittee prohibiting the use of the vehicle by others and the first permittee has broad, general control over the vehicle, the issue of whether the named insured had given express or implied permission for the second permittee to operate the vehicle must be evaluated by inquiring whether it was reasonably foreseeable that the first permittee would allow others to operate the vehicle. Hughes v. Southeastern Fidelity Insurance Company, 340 So.2d 293 (La. 1976). Where the original permittee has been granted more or less general discretion and continuous control over the insured vehicle by the named insured, such general permission carries with it the implied consent of the named insured for the original permittee to allow third persons to use the vehicle. Coco v. State Farm Mutual Automobile Insurance Company, 136 So.2d 288 (La.App. 3rd Cir.1961), DiLeo v. White, 391 So.2d 1374 (La.App. 4th Cir. 1980).
In some instances, restrictions have been placed upon the original permittee prohibiting the use of the vehicle by any other person. In such cases in which the first permittee does not have broad and unrestricted control over the vehicle, rather than evaluating the issue of foreseeability the courts have looked to whether circumstances exist which negate the restriction.
The applicable law for evaluating such cases was set forth by this court in Solice v. State Farm Mutal Auto Insurance Company, 488 So.2d 1159 (La.App.2d Cir. 1986):
A plaintiff who seeks to establish coverage under the omnibus clause of an *371 automobile liability policy must prove the vehicle was being used with the express or implied permission of the named insured. Gremillion v. Goleman, 316 So.2d 810 (La.App. 1st Cir.1975); Devall v. State Farm Mutual Insurance Co., 249 So.2d 282 (La.App. 1st Cir.1971). When a first permittee of the named insured violated an express restriction by the named insured by permitting another to drive the insured vehicle such driver does not become an omnibus insured. Malmay v. Sizemore, 474 So.2d 1358 (La. App.2d Cir.1985); DiLeo v. White, 391 So.2d 1374 (La.App. 4th Cir.1980); writ denied, 396 So.2d 1352 (1981). See American Home Assurance Co. v. Czarniecki, supra and Hughes v. Southeastern Fidelity Insurance Company, [supra].
There are three exceptions to this rule. The first is where the actions of the second permittee serve some purpose, benefit or advantage of the named insured. Devall v. State Farm Mutual Insurance Company, supra; Thomas v. Peerless Insurance Company, 121 So.2d 593 (La.App.2d Cir.1960). The second exception is where the first permittee violates the restriction to the knowledge of the named insured who makes no significant protest. Butler v. Pardue, 415 So.2d 249 (La.App.2d Cir.1982). The third exception is where despite the express restriction, the facts present a situation where it can reasonably be implied that the named insured nevertheless granted permission to the second permittee, such as in an emergency situation where the first permittee requests that the second permittee operate the vehicle. Brooks v. Delta Fire & Casualty Co., 82 So.2d 55 (La.App. 1st Cir.1955).
Under the facts of this case, it is clear that the named insured, John Allen Crymes, had allowed general use of the vehicle by the permittee, James Foster, but with some restrictions. James Foster was given permission to use the vehicle for work related purposes. He was also granted general permission to use the vehicle for personal errands in the communities near the farm. However, James Foster was told not to use the vehicle to travel great distances from the community in which he lived without special permission. In addition, James Foster was specifically instructed that he was not to allow his brother, Jerry, to drive the truck.
Therefore, because the original permittee was expressly prohibited from granting use of the vehicle to Jerry Foster, we must determine whether the facts of this case fall under any of the exceptions to the rule announced in Solice v. State Farm Mutual Auto Insurance Company, supra.
It is clear that the actions of Jerry Foster, in using the vehicle for personal reasons, served no purpose, benefit or advantage of the named insured. Further, no emergency situation existed giving rise to an inference of implied permission for Jerry to use the vehicle. However, the plaintiffs contend that because John Allen Crymes saw Jerry Foster operate the vehicle on the farm and did nothing to prevent him from doing so, the restriction against Jerry Foster using the vehicle was negated.[2]
The jurisprudence provides that permission is implied when the named insured has knowledge of the fact that the original permittee has permitted others to use the vehicle in spite of the prohibition and after acquiring that knowledge makes no protest and takes no action to prevent him from continuing to do so. Coco v. State Farm Mutual Automobile Insurance, supra; DiLeo v. White, supra; Building Specialties, Incorporated v. State Farm Mutual Automobile Insurance Company, 440 So.2d 984 (La.App. 3rd Cir.1983).
In this case, James Foster was an original permittee of the vehicle, owned by Crymes. Crymes had specifically instructed James not to allow Jerry the use of the vehicle. The restriction concerning Jerry was not limited to his operation of the *372 vehicle only on farm property or only during working hours. The restriction was not to allow Jerry use of the vehicle under any circumstances. However, when Crymes saw Jerry operating the vehicle on the farm property, he did nothing. Crymes did not instruct Jerry to cease driving the vehicle nor did he tell him that he had restricted use of the vehicle only on the farm property during working hours.
Crymes' silence negated the restriction placed upon James Foster that he could not allow Jerry to drive the vehicle. Thereafter, James Foster possessed the authority to allow Jerry use of the vehicle and if such permission and authority were granted, Jerry would be covered under the insurance policy. Crymes' silence after seeing Jerry drive the vehicle brought the case under the rule of Taylor v. Liberty Mutual Insurance Co., supra, in that James had general control of the vehicle and Crymes acquiesced in James allowing others, including Jerry, to use the vehicle.
The question then becomes whether, on the date of this accident, James Foster had given express or implied authority and permission to Jerry to use the vehicle. The trial court made no credibility evaluation on this issue.
The record shows that the truck was kept in front of James' house with the keys in the ignition. As mentioned previously, the vehicle had been entrusted to James Foster for his use and had almost become a general utility vehicle, used by James for both his work and for personal purposes. The vehicle was also used by other farm workers, both on and off the farm, for work purposes and for personal errands in the community with the acquiescence of Crymes.
The record shows that the vehicle was used by Jerry Foster on the farm, as confirmed by Mr. Crymes, and that Jerry Foster also used the vehicle for personal errands in the community. James Foster admitted knowing that Jerry had used the vehicle from time to time in the past. Apparently, Jerry's use of the vehicle did not generate any complaints by James or Mr. Crymes. The record clearly shows that James knew of Jerry's use of the truck and did not object.
Jerry Foster testified that on the day of the accident he had been working on his own automobile, which had broken down. His friend, Johnny Morales was assisting him. Jerry testified that he obtained James' permission to use the truck to go pick up a part for his car. James denied giving permission. However, James' testimony concerning the events of the day of the accident was vague and inconsistent. Also, parts of his testimony were rebutted by his deposition given before trial. Jerry and Mr. Morales testified that they did drive the truck on the day of the accident to obtain the part for Jerry's car. James was riding a horse and they drove the vehicle "right by him" and waved. James did not deny this event, although he said he didn't remember it. That afternoon, James came by Jerry's house while Mr. Morales was still there. Jerry still had the truck, which was parked in his front yard. The testimony is uncontroverted that James saw the truck parked at Jerry's house and made no protest. James was therefore aware of Jerry's use of the vehicle and did nothing to prevent it.
Considering the totality of the circumstances in this case, we find that Jerry had the implied permission of James to use the vehicle. Because James, the first permittee, had authority to confer permission to use the vehicle on a second permittee, and he impliedly gave Jerry permission to use the vehicle, Jerry was using the vehicle with permission and was covered by the omnibus insured clause of the insurance policy. Just as in other deviation cases, once permission was conferred upon Jerry, the use to which he put the vehicle was no longer important. Boudreaux v. State Farm Mutual Automobile Insurance Company, 385 So.2d 480 (La.App. 1st Cir. 1980), writ denied, 392 So.2d 690, 691 (La. 1980); Gathe v. Aetna Casualty and Surety Co., 345 So.2d 117 (La.App. 1st Cir. 1977), writ denied, 346 So.2d 709 (La. 1977); Carey v. Ory, 421 So.2d 1003 (La.App. 3rd Cir.1982), writ denied, 426 So.2d 178 (La. 1983); Moore v. Travelers Indemnity Co., *373 284 So.2d 165 (La.App. 3rd Cir.1973), writ denied, 286 So.2d 365 (La.1973).

CONCLUSION
For the above stated reasons, we find, based upon the facts of this case, that Jerry Foster had the implied permission of both Mr. Crymes and James Foster sufficient to cause him to be covered by the omnibus insured clause of the insurance policy issued by Louisiana Farm Bureau Insurance Company.
Therefore, the decision of the trial court is reversed and the defendants are taxed with the costs in this court and in the court below. The case is remanded to the trial court for further proceedings in accordance with law.
REVERSED AND REMANDED.

ON APPLICATION FOR REHEARING
HALL, MARVIN, LINDSAY, FRED W. JONES and NORRIS, JJ.
Rehearing denied.
NOTES
[1] The definition of an insured in the insurance policy in this case deals only with whether the operator of the vehicle had permission of the named insured to operate the vehicle. It is distinguishable from later insurance policies which evaluate permission in terms of whether the operator had a reasonable belief that he had permission to operate the vehicle. See Francois v. Ybarzabal, 483 So.2d 602 (La.1986).
[2] We also note that after the accident, Mr. Crymes went to the Sheriff's office and picked up Jerry and took him home. We think it significant that Mr. Crymes made no protest to anyone about Jerry's alleged lack of authority to operate the vehicle on the night of the accident.