SEXTON, J. Pro Tem.
| t Plaintiffs, Charles Barton, Jr. and Glynn Farrar, Jr., appeal the trial court’s judgment granting summary judgment in favor of Defendant, U.S. Agencies Casualty Insurance Company (“U.S.Agencies”), and dismissing Plaintiffs’ claims for coverage of the damages they sustained while passengers in a vehicle insured under a U.S. Agencies policy. For the following reasons, the judgment of the trial court is hereby affirmed.
FACTS
On the evening of November 30, 2005, Plaintiffs were passengers in a 2004 Oldsmobile Alero [1] driven by Defendant, Mat *1269 thew Dykes. The vehicle was owned by Dykes’ brother, Damon Wade, and was insured through a policy issued by U.S. Agencies. Dykes had taken the car from his brother’s house while Wade was at work. He then picked up Barton and Far-rar and a third individual, Cassey Dunn. A one-vehicle accident ensued when Dykes lost control of the vehicle and it plunged into a canal.
Barton and Farrar filed a petition seeking damages from Dykes, Wade and Wade’s insurer, U.S. Agencies. The petition alleges that Dykes was driving the insured vehicle with the “full consent and permission of its owner.” Wade and U.S. Agencies each filed answers in which they denied that particular allegation.
Plaintiffs filed a motion for summary judgment seeking a declaration that the U.S. Agencies policy afforded liability coverage for Plaintiffs’ damages arising out of Dykes’ negligence. U.S. Agencies filed a motion for |2summary judgment seeking dismissal from the suit on the ground that coverage for liability arising out of Dykes’ use of the vehicle was excluded under the terms of the policy.
Under Part A — COVERAGE FOR YOUR LIABILITY TO OTHERS of the U.S. Agencies policy, a “covered person” includes:
1. You and any family member, and any additionally listed driver with respect to any auto accident while driving your insured auto or a non-owned auto.
2. Any other person driving your insured auto with the expressed or implied permission of the named insured while that person is driving your insured auto.
(Emphasis in original.) A “family member” is defined in the definitions portion of the policy as a person related to the named insured by blood, marriage or adoption who resides in the same household as the named insured.
Both Plaintiffs and U.S. Agencies relied almost exclusively on the deposition testimony of Wade in supporting their respective motions for summary judgment. Wade testified that he lived alone at his residence at the time of the accident, but that his girlfriend, Katrina Ford, and his brother, Dykes, would occasionally spend the night at his house. Wade stated that Dykes normally resided with their grandmother, but that, during 2005, he stayed at Wade’s home and their uncle’s home off and on as a result of friction in their grandmother’s home. The longest he had stayed with Wade was a period of three weeks. Wade, however, testified that, as of the date of the accident, he could only state with certainty that his brother had spent the night at his home within the previous week, thereby ^suggesting that the three-week stay had taken place some time prior to the date of the accident.
On the issue of whether Dykes was a permissive user of the vehicle on the night in question, Wade testified that he had left the keys to the vehicle on his bedroom dresser and then left to work the night-shift at his place of employment. After Wade had left for work, Dykes took the keys from the dresser and drove off in the vehicle. He testified that, to his knowledge, Dykes had never had a driver’s license and, thus, was not allowed to drive Wade’s vehicle. Presuming that lack of permission was sufficient to proscribe the conduct, Wade did not recall ever expressly forbidding Dykes to drive the vehicle.
Wade recalled that the only time he had allowed Dykes to operate the vehicle was to move the car in the driveway so that *1270 Dykes could wash it. The only other time Wade knew Dykes to have driven the vehicle occurred one evening after Dykes and his girlfriend had an argument outside Wade’s home. During the fight, Dykes’ girlfriend threw her keys at Dykes after which they were unable to find them. To aid them in looking for the keys, Dykes moved Wade’s vehicle to use the headlights for illumination. While doing so, Dykes put a dent in the car compelling him to admit the unauthorized use to Wade.
The only other evidence submitted to the trial court was the deposition testimony of Katrina Ford, who was at Wade’s residence on the night of November 30, 2005. She testified that, to her knowledge, Dykes had spent the night at his brother’s home before, but that he did not live | ¿there. She testified that Dykes did not keep his belongings at Wade’s house and it was her understanding that Dykes lived with his grandmother. On the night of the accident, she had gone to sleep in Wade’s bedroom and she did not notice Dykes taking the keys to the vehicle off of Wade’s dresser. The bedroom door was open and the dresser was near the door. She awoke to the sound of one of Plaintiffs’ uncles beating on the front door at approximately 4:00 a.m. He informed her that Dykes had taken Wade’s vehicle, that he had had an accident and that the occupants of the vehicle were all at the hospital. She testified that Dykes did not ask for permission to take the vehicle, nor did she give him permission to take the vehicle. She was unaware that he had done so until the following morning.
At the hearing on the cross motions for summary judgment, the parties focused their arguments on whether Dykes was a permissive driver of the vehicle without mentioning the possibility of whether coverage existed under the “family member” provision of the policy. At the conclusion of arguments, the trial court granted summary judgment in favor of U.S. Agencies. A judgment declaring that no coverage existed under U.S. Agencies’ policy was signed on July 28, 2006. The instant appeal followed.
DISCUSSION
Plaintiffs argue that the evidence regarding Dykes’ familial relationship to the named insured, Dykes’ prior use of the vehicle and the lack of an express prohibition made by the named insured established that | sDykes was a permissive user to whom coverage should be extended under the policy. We disagree.
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is proper. Suire v. Lafayette City-Parish Consolidated Government, 04-1459 (La.4/12/05), 907 So.2d 37. Thus, the appellate court asks the same questions the trial court asks in determining whether summary judgment is appropriate. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B) and (C). Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits reveal no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, *1271 Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Marshall v. Seago, 41,138 (La.App.2d Cir.6/28/06), 935 So.2d 752. Accordingly, the policy provisions cannot conflict with the statutory requirement in Louisiana of omnibus coverage in favor of any person using an insured vehicle with the permission or consent of the named insured. La. R.S. 32:900(B)(2). This provision requires that a policy insure permissive drivers in an amount sufficient to satisfy the minimum 1 filegal requirements set forth in the Compulsory Motor Vehicle Liability Security Law. La. R.S. 32:861, et seq.
Specifically, La. R.S. 32:900 requires all motor vehicle liability policies to include an omnibus clause which insures the person named therein and “any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured. ...” A plaintiff who seeks to establish coverage under the omnibus clause of an automobile liability policy has the burden of proving the fact of initial use with express or implied permission of the named insured. Perkins v. McDow, 615 So.2d 312 (La.1993). The existence of permission must be proved by a preponderance of the evidence -without the aid of any presumptions. Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398; Norton v. Lewis, 623 So.2d 874 (La.1993). Implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. Manzella, supra. Furthermore, the “initial permission” rule adhered to by our courts dictates that, once permission has been established, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. Parks v. Hall, 189 La. 849, 181 So. 191 (1938); Norton, supra. Thereafter, “coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying an utter disregard for the return or safekeeping of the vehicle.” Id.
After reviewing the record, we find no error in the trial court’s conclusion that no genuine issue of material fact existed on the question of 17whether Dykes had permission, express or implied, to drive the vehicle in question. Since there is no evidence of express permission, the record must evidence a genuine issue of fact as to the issue of implied permission for summary judgment to have been inappropriate. The only evidence plausibly suggestive of implied permission was Wade’s onetime consent to Dykes’ repositioning of the vehicle within the confines of the driveway to facilitate washing it.
Dykes’ unauthorized use, again within the confines of the driveway, in repositioning the car so as to use its headlights in looking for a set of keys was clearly without permission from Wade and probably would have gone unnoticed by Wade without the “dent.” There was no evidence that, prior to the accident, Dykes had ever driven his brother’s vehicle, with or without permission, on the public roadways or other private property. The limited scope of these incidents does not constitute a course of conduct indicating the named insured’s acquiescence in Dykes’ “use” of the vehicle.
The case of King v. Louisiana Farm Bureau Insurance Co., 549 So.2d 367 (La.App. 2d Cir.1989), writ denied, 552 So.2d 387 (La.1989), relied on by Plaintiffs, is factually distinguishable from the present case. In King, supra, an employee in a farming operation got into an accident while driving a farm truck that had been entrusted to his co-worker/brother. The evidence at trial established that, while the defendant’s brother had been specifically instructed by the employer not to let the *1272 defendant drive the vehicle, the employer had witnessed Defendant driving the truck on the farm on several occasions without taking any |sremedial action. This court concluded that this behavior negated the restriction previously placed on Defendant’s brother, thus allowing him to give Defendant permission to drive the vehicle, which he had done on several occasions both on and off the farm. This court, thus, concluded that Defendant had implied permission on the night of the accident, making coverage under the omnibus clause applicable. The present case presents no such second permittee issues.
Lastly, Dykes’ familial relationship to the named insured is only relevant under the terms of the policy if he was residing in the household of the named insured at the time of the accident. Both Wade and his girlfriend declared in their depositions that he was not living in the house at the time of the accident, although he occasionally spent the night there. No evidence being presented to the contrary, we find on the record before us that no genuine issue of material fact existed as to whether Dykes was residing in Wade’s home at the time of the accident.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is hereby affirmed. Costs are assessed to Plaintiffs.
AFFIRMED.

. The petition asserts that Plaintiffs were passengers in a 1999 Chevrolet Silverado. How *1269 ever, the record indicates that Plaintiffs were actually traveling in a 2004 Oldsmobile Alero.